IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RYAN BAGWELL** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:15-cv-00531 (CRC) |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **JUSTICE** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Ryan Bagwell hereby opposes Defendant's August 28, 2015 Motion for

Summary Judgment, and cross-moves for partial summary judgment with regard to the 104

pages of withheld records Defendant has reviewed for potential release. Specifically, Plaintiff

contends that Defendant's justification is insufficient to meet its burden of proving the withheld

records are exempt from the FOIA's disclosure requirements.

**I.     FACTUAL BACKGROUND**

On Saturday, November 5, 2011, the Pennsylvania Office of Attorney General released a

grand jury presentment that alleged multiple instances of child sexual assault by Gerald

Sandusky, a former football coach for The Pennsylvania State University ("PSU"). The

presentment also alleged that two PSU administrators - then-Director of Athletics Timothy

Curley and then-Senior Vice President for Business and Finance Gary Schultz - failed to report

Sandusky's activity to law enforcement authorities when they were legally obligated to do so. Sandusky, Curley and Schultz were arrested and charged in accordance with the grand jury's recommendation.

The release of the presentment marked a period of crisis for PSU, which received extensive attention, scrutiny and criticism from the national media for its administrators' role in responding to reports of Sandusky's abuse. Facing mounting pressure from the public to hold the university accountable for its alleged failures, on November 11, 2011, PSU's Board of Trustees fired then-PSU President Graham Spanier and former PSU Football Coach Joseph Paterno during a late-evening press conference. Several days later, the trustees hired former FBI Director Louis J. Freeh and his law firm, Freeh, Sporkin & Sullivan ("FSS"), to conduct an internal investigation into the presentment's allegations and prepare its findings in the form of a public report[1].

Paterno died after battling lung cancer on January 23, 2012 (Exhibit A). Additionally, on February 24, 2012, PSU voluntarily announced it had received a subpoena from the U.S. Attorney for the Middle District of Pennsylvania related to a grand-jury investigation (Exhibit B). The subpoena sought information relating to Sandusky and the trustees (Exhibit C). On June 22, 2014, Sandusky was tried and convicted of most of his charges in the Centre County Court of Common Pleas (Exhibit D).

On July 12, 2012, Louis J. Freeh presented FSS's findings to the public at a live, televised press conference[2]. In his prepared remarks, Freeh stated, "our work was done in parallel with several other active investigations by agencies and governmental authorities, including the

---

[1] http://abcnews.go.com/US/penn-state-hires-fbi-director-louis-freeh-investigate/story?id=14999351
[2] https://www.washingtonpost.com/sports/2012/07/12/gJQAfVoMfW_story.html

… United States Attorney ... We continuously interfaced and cooperated with those agencies"
(See "Remarks of Louis Freeh" at 3, Exhibit E). On or about November 11, 2012, state
prosecutors charged Spanier with crimes related to Sanduksy's abuse, and issued additional
charges to Curley and Schultz.

### Plaintiff's FOIA Request

On April 30, 2014, Plaintiff sent his FOIA request to Executive Office of United States
Attorneys ("EOUSA"), a subcomponent of Defendant, seeking "access to any and all records of
investigations between November 1, 2011 and [April 30, 2014] that pertain to allegations of
child sexual abuse that occurred on the campus of The Pennsylvania State University" (Exhibit
F). EOUSA's FOIA/Privacy Act office denied Plaintiff's request on June 11, 2014 because
Plaintiff sought "records concerning a third party" which it said were not subject to public
inspection pursuant to the Privacy Act, 5 U.S.C. § 552(a), and Exemption 6 and Exemption 7 of
the FOIA, 5 U.S.C. § 552(b)(6) and (b)(7) (Exhibit G).

On June 20, 2014, Plaintiff filed an administrative appeal of the denial with Defendant's
Office of Information Policy ("OIP"). OIP reversed EOUSA's denial on August 29, 2014 and
remanded the matter to EOUSA with instructions to (1) reopen the matter; (2) search for records
responsive to Plaintiff's request, and; (3) send any "releasable" records directly to Plaintiff
(Exhibit H).

After the Appeals Officer's remand letter was issued, EOUSA did not contact Plaintiff
regarding its plans for complying with the Appeals Officer's instructions. As a result, Plaintiff
contacted EOUSA several times between November 3, 2013 and the filing of this complaint, but
was unable to ascertain when EOUSA would comply with OIP's remand order. See Declaration

of Ryan Bagwell ("Bagwell Declaration") (Exhibit I). At one point, EOUSA informed Plaintiff that responsive records were being reviewed for potential release. *Id*. Later, however, EOUSA told Plaintiff it never received any records because it sent a search request to the wrong United States Attorney. *Id*.

Because EOUSA had failed to comply with OIP's instructions, Plaintiff filed the instant action on April 8, 2015. Subsequent to the filing of this action, EOUSA provided Plaintiff with a final response to his FOIA request on July 8, 2015 (Exhibit J). The agency released 517 pages of records that consisted almost entirely of newspaper articles, a copy of the Freeh Report and half of an additional copy of the Freeh Report. It withheld 104 pages in full, citing 5 U.S.C. § 552(b)(3) (relating to records protected by a particular statute), 5 U.S.C. § 552(b)(6) and 5 U.S.C. § 552(b)(7)(C) (relating to personal privacy). In addition, EOUSA stated it was "withholding grand jury material which is retained in the District."

Because the purported grand jury material remained in the district, it did not review the material to determine if the records could be released. Plaintiff filed a motion to compel the production of a *Vaughn* index on August 13, 2015. The court denied Plaintiff's motion as "premature."

On August 16, 2015, Defendant filed its motion for summary judgment. In support of its position, it submitted declarations and what it believes is a "*Vaughn* index." In addition to the information provided in its final response, Defendant states that 2,700 pages of records and 86 gigabytes of electronic information were located, but not submitted to EOUSA for review because they are exempt from disclosure pursuant to Federal Rules of Criminal Procedure 6(e)(2)(B).

## II.      STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to the material facts, and the moving party demonstrates it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). FOIA lawsuits are typically resolved on cross-motions for summary judgment. *Reliant Energy Power Generation v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007). A court reviews agency handling of a FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B); *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984).

The government bears the burden to establish that its claimed exemptions apply to each document for which it invokes an exemption. *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619, 393 U.S. App. D.C. 384 (D.C. Cir. 2011). The government cannot satisfy its burden with affidavits that are vague or conclusory, or merely parrot the statutory standard. *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 455 F.3d 283, 287, 372 U.S. App. D.C. 198 (D.C. Cir. 2006). Evidentiary declarations must describe the justifications for withholding in "specific detail, demonstrate[ing] that the information withheld logically falls within the claimed exemption." *Am. Civil Liberties Union*, 628 F.3d at 619. "When demonstrating that a FOIA exemption applies to some portion of a document withheld, the agency must also provide a detailed justification for its non-segregability," *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776, 354 U.S. App. D.C. 49 (D.C. Cir. 2002), and the agency should "describe what portion of the information is non-exempt and how that material is dispersed throughout the document," *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261, 184 U.S. App. D.C. 350 (D.C. Cir. 1997).

III.    ARGUMENT

       This case involves two distinct groups of records. The first consists of 104 responsive

pages that were obtained and reviewed by EOUSA, but ultimately withheld in their entirety. The

second consists of at least 2,700 pages and 86 gigabytes of electronic material, none of which

was obtained and reviewed by EOUSA for potential release. For the following reasons,

Defendant has not met its burden of proving that any of the responsive material may be withheld.

A.     **EOUSA has failed to demonstrate it has conducted an adequate search because it
       has failed to provide or identify communications known to exist.**

       During its investigation of PSU and Sandusky, Defendant communicated with FSS, the

law firm hired by PSU to conduct the university's internal investigation. FSS "continuously

interfaced" with various government agencies, including Defendant (Remarks of Louis Freeh at

3). Defendant has produced none of the communications between it and FSS. Furthermore,

according to the Declaration of Jodi Matuszewski, Defendant did not search for responsive

records in its e-mail system. The court should order Defendant to produce all responsive

communications with FSS and conduct a thorough search for responsive records that are

located in its e-mail system.

B.     **Defendant's evidence is wholly insufficient to meet its burden of proof.**

       Defendant has failed to meet even the minimum threshold for proving the responsive

records may be withheld. It affirmatively chose not to review nearly all of the responsive

material, choosing instead to rely on on a bald claim of grand jury secrecy. An agency cannot

meet its burden of proving that a record is exempt from the disclosure requirements of the FOIA

if it has failed to review the record in question. Without a diligent review of the material, it

cannot provide the "specific detail" that is required to sustain its decision to withhold. See *Am. Civil Liberties Union,* supra.

With regard to the records that were reviewed but withheld, the government's declarations are too vague and conclusory to demonstrate the application of the claimed exemptions. For example, in addressing the Exemption 3 claims (information protected by statute), the Stone declaration merely parrots the statutory standard and presumes the withheld material is protected. (i.e, "[T]he information that is being withheld falls within the criteria specified in 18 U.S.C. § 3509(d) (Stone Declaration ¶ 20), and "[T]he withheld infonnation falls within the criteria specified in Fed. R. Crim. Proc. 6(c)(2)(B)" (Stone Declaration ¶ 22)). This is exactly the kind of conclusory statement that is insufficient.

In addressing the Exemption 5 claims (pertaining to attorney work-product), the Stone Declaration states the withheld information "includes" various communications "regarding the Penn State investigation" (Stone Declaration ¶ 24). It does not provide any specific indication that the each identified document meets the criteria for withholding, e.g. the identities of the individuals involved in the communications, the nature or description of the documents' contents, etc. And when addressing Defendant's Exemption 6 and 7(C) claims, the Stone Declaration merely states that various specific information has been withheld (i.e. names, addresses, phone numbers), but does not explain why the documents may be withheld in their entirety. The government must provide further details of each withheld document in order to meet its burden.

Though the government submitted what it refers to as a *Vaughn* index, the document resembles nothing like the information described by the court in *Vaughn v. Rosen,* 484 F.2d 820

(D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). An index compliant with the *Vaughn* standard must describe each document or portion of each document that has been withheld and give a detailed justification of the agency's grounds for nondisclosure, correlating each exemption of the FOIA upon which the agency relies with the record or portion of the record to which the exemption purportedly applies. *Vaughn,* 484 F.2d 820. Here, the government only submitted a table that groups the documents by the claimed exemptions as organized in the Stone Declaration. It does not describe any of the withheld documents or provide any specific information about any of the withheld records. Plainly, Defendant's so-called "Vaughn index" is nothing of the sort and has absolutely no evidentiary value.

**C.     EOUSA has failed to demonstrate the responsive records are exempt from disclosure pursuant to Exemption 3.**

Exemption 3 permits an agency to withhold records "specifically exempted from disclosure by statute" if the statute (1) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (2) establishes particular criteria for withholding or refers to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3). Defendant relies on two statutes: 18 U.S.C. § 3509(d) (relating to privacy protections for child victims), and Federal Rule of Criminal Procedure 6(e)(2) (relating to grand jury matters). For the following reasons, Defendant has failed to prove that either statute protects the records it is withholding.

**1.     18 U.S.C. § 3509(d) - identities of minor victims**

Under 18 U.S.C. § 3509, government employees connected with a criminal case involving a child who is a victim of physical or sexual abuse, child pornography or child prostitution, or involving a child who witnesses a crime against another person, must:

> keep all documents that disclose the name or any other information concerning a child in a secure place to which no person who does not have reason to know their contents has access; and disclose [such] documents . . . or the information in them that concerns a child to persons who, by reason of their participation in the proceeding, have reason to know such information.

18 U.S.C. § 3509(d)(1). If records disclosing the name of or information about a child must be filed in a criminal case, the records "shall be filed under seal without necessity of obtaining a court order." 18 U.S.C. § 3509(d)(2). Only a redacted copy may be entered onto the public docket. *Id*.

Defendant states that "[p]ortions of the information that Plaintiff sought consists of personally identifiable information that would reveal the identify of the individuals who were minor victims or minors in some connected (sic) to child sexual abuse that occurred on the Penn State campus." (Stone Decl. ¶ 17). The paragraph pointed to by Defendant only suggests that a <u>portion</u> of the responsive records contains this information, indicating that another portion of the responsive records <u>do not</u> contain the identifies of minor victims. Defendant cannot withhold records pursuant to 18 U.S.C. § 3509 that do not contain the information that 18 U.S.C. § 3509 protects. Without adequately identifying which records contain this information, or portions thereof, Defendant cannot meet its burden of proving all of the withheld records are subject to the protections of 18 U.S.C. § 3509 and Exemption 3.

**2.      Grand jury information**

EOUSA conducted an electronic search of its computer system and discovered 86 gigabytes worth of electronic material. (Declaration of Jodi Matuszewski, , ¶ 13)("Matuszewski Decl."). While Defendant has failed to submit competent evidence regarding the number of pages withheld, it estimates the size of the electronic material at 570,000 pages (Defendant's Statement of Undisputed Material Facts, ¶ 7). An additional 2,762 pages of records were separately discovered. *Id*. Without reviewing the material, Defendant contends all of the material is protected by Federal Rule of Criminal Procedure 6(e)(2).

Rule 6(e)(2) prohibits the disclosure of "matter[s] occurring before the grand jury." Fed.R.Crim.P. 6(e)(2). However, not all information considered by a grand jury is subject to the secrecy provisions of Rule 6(e). "There is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers ... The touchstone is whether disclosure would 'tend to reveal some secret aspect of the grand jury's investigation' such matters as 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jury, and the like.'" *Senate of the Commonwealth of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987) (citation omitted); see also *Stolt-Nielsen Transp. Group Ltd. v. United States*, 534 F.3d 728, 732 (D.C. Cir. 2008). To prevail on its claim of 6(e) protection, Defendant must demonstrate "some affirmative demonstration of a nexus between disclosure and revelation of a protected aspect of the grand jury's investigation." *Senate of the Commonwealth of Puerto Rico*, supra., at 584.

Courts have generally protected transcripts of testimony, subpoenas and documents that describe particular actions of the grand jury during its meetings. However, information submitted

to the grand jury as exhibits are not protected by Rule 6(e), *id.*, including records created independently of the grand jury process. *Washington Post Co. v. U.S. Dep't of Justice*, 863 F.2d 96, 100 (D.C. Cir. 1988).

In its supporting memorandum, Defendant does not point to any evidence that all of the responsive material withheld by the USAO would "tend to reveal some secret aspect of the grand jury's investigation" *Senate of the Commonwealth of Puerto Rico,* supra. The Matuszewski Declaration only states that responsive records "pertaining to grand jury proceedings" were found (Matuszewski Decl. ¶ 13). The Stone Declaration provides little more than a conclusory statement that Defendant is prohibited from releasing the information pursuant to Fed. R. Crim. Proc. 6(e)(2)(B) (Stone Decl. ¶ 22). Defendant has presented no evidence that any of the 86 GB and 2,762 pages of records withheld by the USAO would reveal the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, or deliberations or questions of the jury. Indeed, Defendant says it is common practice for EOUSA not to even review material that it claims is protected by grand jury rules (Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, p. 9). This it cannot do. Merely claiming that material "pertains" to grand jury proceedings is not enough for Defendant to meet its burden of proof that the withheld records are protected by Rule 6(e).

**D.  EOUSA has failed to demonstrate the responsive records are exempt from disclosure pursuant to Exemption 5 and the attorney-work product doctrine.**

Defendant contends that an undisclosed number of responsive records may be withheld pursuant to the attorney-work product privilege. The work-product privilege is encapsulated in Exemption 5, which protects from disclosure "inter-agency or intra-agency memorandums or

letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

The work-product privilege exists to provide an attorney "a certain degree of privacy, free from unnecessary intrusion by opposing parties" to allow for the "proper preparation of a client's case without undue and needless interference." *Hickman v. Taylor,* 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385. This circuit's Court of Appeals has held that the "testing question" for the work-product privilege is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Senate of Puerto Rico* at 574, 586, n.42. "For a document to meet this standard, the lawyer must have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *In re Sealed Case*, 330 U.S. App. D.C. 368, 146 F.3d 881, 884 (D.C. Cir. 1998).

Taking into consideration the holdings in *Senate of Puerto Rico* and *In re Sealed Case,* some district courts in this circuit have recently established a four-part test for determining the applicability of the privilege an agency. Under that standard, Defendant "must (1) provide a description of the nature and contents of the withheld document; (2) identify the document's author or origin (by job title or otherwise), (3) describe the factual circumstances that surround the document's creation, and (4) provide some indication of the type of litigation for which the document's use is at least foreseeable." *National Sec. Counselors v. CIA*, 960 F. Supp. 2d 101 2013 U.S. Dist. LEXIS 115184 (D.D.C 2013); *Am. Immigration Council v. United States Dep't of Homeland Sec.*, 950 F. Supp. 2d 221; 2013 U.S. Dist. LEXIS 88033, June 24, 2013, (D.D.C 2013).

Here, Defendant has not met its burden of proving the application of the work-product privilege under either standard set by the Court of Appeals and the district courts. Defendant relies on the Stone Declaration to meet its evidentiary burden, which identifies two classes of documents that pertain to separate criminal matters: (1) email conversations among government attorneys, law enforcement personnel "and other members of the government litigation team regarding the Penn State investigation that ultimately lead to the prosecution and conviction of Gerald Sandusky, former Penn State Assistant Coach;" and (2) "legal research, legal theories, notes, and other legal documents that created or compiled in preparation for the grand jury proceedings and criminal prosecution of Mr. Sandusky" (Stone Decl. ¶ 24).

Regarding the first class of documents (those that pertain to the investigation that ultimately led to the prosecution and conviction of Sandusky), the Stone Declaration does not reveal the nature of the documents at issue. While it states the e-mails are conversations "regarding" an investigation, it does not say the e-mails were exchanged in furtherance of a government legal matter. By failing to reveal the nature of each e-mail, Defendant has not satisfied the standard established by the Court of Appeals. Defendant's evidence is further deficient under the district courts' standards because it fails to describe the documents' contents, their authors or origins, and the circumstances of their creation.

Moreover, the investigation that led to Sandusky's prosecution and conviction was conducted by the Pennsylvania Office of Attorney General, not Defendant. The purpose of the work-product privilege is to allow for the "proper preparation of a <u>client's</u> case" by the attorney. The privilege does not protect information that was prepared for a matter in which the attorney was not representing his client. The government was not involved in the "litigation" to which the

documents pertain. The work-product privilege simply does not apply to the first class of the withheld records.

With regard to the second class of documents (documents created in preparation for grand jury proceedings), the Stone Declaration is too conclusory. It merely presumes that the documents constitute protected information without describing their nature as required by the Court of Appeals. This is exactly the kind of conclusory evidence the courts have repeatedly rejected.

Finally, it is worthwhile to compare Defendant's privilege evidence in the instant matter to the evidence submitted in *National Sec. Counselors* and *Am. Immigration Council.* In *National Sec. Counselors,* the agency conducted a document-by-document review and provided a *Vaughn* index containing (1) the date each withheld document was created; (2) a description of the document; (3) the agency that authored the document, and; (4) the reason for withholding access. Even after providing that information for each document for which privilege was claimed, the court still concluded the evidence was insufficient for the agency to meet its evidentiary burden. Here, in the instant matter, the agency's *Vaughn* index simply lists the same vague and conclusory statements found in the Stone Declaration. It does not list each document or provide any context that would enable the court to understand the nature of each withheld document. If the evidence submitted in *National Sec. Counselors* was insufficient*,* Defendant's evidence here must also be declared insufficient.

Similarly, in *Am. Immigration Council*, where 600 pages of documents were withheld, the agency provided a six-page "summary" Vaughn index that grouped "multiple, distinct documents under generic headings that are formulated in the broadest possible terms." *Am.*

*Immigration Council* at 47. Once again, the court found the agency's index was insufficient to prove the application of the work-product privilege. Here, Defendant's *Vaughn* index is similar and equally insufficient to meet the agency's burden of proof. This Court should similarly reject Defendant's privilege claims because of its substantially deficient evidence.

**E.      EOUSA has failed to demonstrate the responsive records are exempt from disclosure pursuant to Exemption 6, 7(C) and 7(D).**

Defendant cites Exemption 7, 7(C) and 7(D) for withholding personally identifiable information. The Stone Declaration generally states that witness interview statements, personally identifiable information related to law enforcement and government personnel and the identities of minor sexual abuse victims are being withheld pursuant to Exemption 6 and 7(C) (Stone Decl. ¶ 27). It further states that Exemption 7(D) is being used to protect the identities of confidential informants.

Plaintiff does not dispute that Defendant may withhold the identities of specific individuals pursuant to Exemptions 7, 7(C) and 7(D). However, EOUSA may not withhold a document in its entirety simply because it contains the name of an individual that may be protected pursuant to an applicable exemption. It must segregate the public information from the non-public information whenever possible, and it has not explained why segregation is not possible in this case.

Even if some of the responsive documents contain the identities of individuals that may be withheld, many individuals involved in the investigation are publicly known or dead, and as a result, the release of their identities would not result in an unreasonable invasion of privacy or otherwise cause them harm. Those individuals include, but are not limited to:

- Jerry Sandusky, former PSU football coach. Sandusky was convicted of child sexual abuse and sentenced to at least 30 years in state prison.

- Joe Paterno, former PSU head football coach. Paterno died in January 2012.

- Graham Spanier, PSU former president; Timothy Curley, former PSU Director of Athletics; and Gary Schultz, former PSU vice president. All three are awaiting trial on state charges alleging they failed to report instances of child sexual abuse.

- Louis Freeh, principal owner of the law firm Freeh, Sporkin & Sullivan. Freeh was hired by PSU to conduct an internal investigation into the criminal allegations against Spanier, Curley and Schultz. Freeh "continuously interfaced" with the USAO during its investigation.

**F.      EOUSA has not demonstrated that it has released all segregable information.**

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this section." 5 U.S.C. § 552(b). District courts have an affirmative obligation to consider the issue and make segregability findings. See *Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999). Defendant has not demonstrated why it cannot release responsive records with the identities of particular individuals redacted.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully asks this court to **DENY** Defendant's motion for summary judgment and **GRANT** Plaintiff's motion for summary judgment with regard to the 104 pages of records that have been reviewed by EOUSA. Plaintiff further asks this court to order the parties to confer and file a proposed plan for determining whether the responsive records that remain in the possession of the USAO are subject to the claimed exemptions.

Respectfully submitted,

Ryan Bagwell
22 Cowdrey Lane
Acton, MA 01720
(608) 466-6195
ryan@ryanbagwell.com