IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RYAN BAGWELL )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES DEPARTMENT OF )<br>JUSTICE )<br>)<br>Defendant. )<br>) | Civil Action No. 1:15-cv-00531 (CRC) |

I, Ryan Bagwell, declare as follows:

1. I am the operator of the Penn State Sunshine Fund ("Fund"), a Limited Liability Corporation duly registered in the State of Wisconsin. The Fund seeks to obtain and publish public records pertaining to the government's interaction with, and oversight of, The Pennsylvania State University. Since the Fund was established in 2013, the Fund has obtained and published thousands of pages of public records primarily related to child sexual abuse scandal that affected university in 2011.

2. I am also the Plaintiff in the above-captioned case.

3. On April 30, 2014, I sent a request to Executive Office of United States Attorneys ("EOUSA") by e-mail seeking "access to any and all records of investigations between November 1, 2011 and [April 30, 2014] that pertain to allegations of child sexual abuse that occurred on the campus of The Pennsylvania State University."

4. EOUSA's FOIA/Privacy Act denied my request on or about June 11, 2014.

5. On or about June 20, 2014, I filed an administrative appeal with Defendant's Office of Information Policy ("OIP").

6. On or about August 29, 2014, OIP granted my appeal and instructed EOUSA to search for responsive records.

7. After OIP instructed EOUSA to search for the records, I did not receive any letter from the government regarding its plans for complying with OIP's instructions.

8. On November 3, 2014, I called EOUSA's FOIA/Privacy Staff to inquire about the status of my FOIA request. I was instructed to speak with John Boseker, an EOUSA attorney who I was told was processing my request. Attorney Boseker did not answer his telephone, and I left a voicemail message asking Attorney Boseker to return my call. Attorney Boseker did not return my call.

9. Because Attorney Boseker did not return my call, on November 10, 2014, I called EOUSA again. EOUSA transferred me to Attorney Boseker's telephone. Attorney Boseker did not answer, and I left a second voicemail message for Attorney Boseker seeking a return call. Attorney Boseker did not return my call.

10. Because Attorney Boseker declined to return my second voicemail message, on November 17, 2014, I again sought to ascertain the status of my FOIA request by telephoning EOUSA. Again, I was instructed to speak with Attorney Boseker. Attorney Boseker did not answer his telephone. This time, I did not leave a voicemail message for Attorney Boseker.

11. Instead, I re-dialed the EOUSA FOIA/Privacy Act office, informed the receptionist that I had attempted to contact Attorney Boseker on two previous occasions, and that

Attorney Boseker had failed to return any of my previous voicemail messages. This time, the EOUSA receptionist transferred me to Donna Preston, EOUSA's FOIA Public Liaison.

12. On November 17, 2014, Ms. Preston informed me for the first time that (1) my request had been assigned a new case number 2014-03904; (2) relevant components of EOUSA had gathered and provided responsive records to EOUSA's FOIA/Privacy Act office for review and processing; (3) she had asked the reviewing paralegal to expedite the processing of the responsive records, and; (4) she could not provide an estimated time for a final response.

13. After receiving no additional communication from EOUSA, on January 29, 2014, I again sought to ascertain the status of my FOIA request by calling Ms. Preston. This time, however, she stated no responsive records had been received by EOUSA for processing, despite what she previously told me.

14. Instead, Ms. Preston told me that her office had originally instructed the wrong United States Attorney to search for responsive records, and that new instructions to search for responsive records had been sent to the correct United States Attorney. She could not provide an estimated date by which EOUSA would provide me with responsive records and a final response to my request.

15. On March 9, 2014, after receiving no additional communication from EOUSA, I again sought the status of my FOIA request by telephoning Ms. Preston. Ms. Preston did not answer her telephone, and did not return a voicemail message.

16. On March 31, 2014, I again sought the status of my FOIA request by telephoning Ms. Preston. Ms. Preston did not answer her telephone, and did not return a voicemail message.

17. On July 18, 2015, EOUSA provided me a final response to my FOIA request. Accompanying the final response letter was approximately 517 pages of records consisting of newspaper articles, a complaint filed in federal court, a copy of what is commonly known as Penn State's Freeh Report (265 pages) and approximately half of another copy of the Freeh Report (149 pages). An index of the records released by EOUSA are attached to this declaration.

Pursuant 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 13th day of October, 2015.

Signed:

Ryan Bagwell

# Index of records released by EOUSA on July 8, 2015

| Description | Pages |
|---|---|
| Complaint filed in *John Doe 6 v. The Pennsylvania State University et. al.*, 13-cv-00336-AB, Pa. Eastern District | 45 |
| "Victim 6 sues Penn State, Sandusky, his charity," by Mark Scolforo, appearing in the *Citizens Voice*, January 22, 2013 | 2 |
| "Judge gives Second Mile charity OK to sell State College building for $650,000," Centre Daily Times, March 27, 2013, | 2 |
| "Second Mile charity gets court OK to sell its former headquarters," Pennlive, March 27, 2013 | 1 |
| "Penn State continues to wait on word of Clery Act violations", centredaily.com, March 27, 2013 | 2 |
| "Penn State trustees seek advice from Cornell on becoming private university," pennlive.com, March 13, 2012 | 1 |
| "'98 report doubted boy's abuse claim," The Patriot News, March 21, 2012 | 2 |
| "Report: Missing files of Sandusky's charity create suspicions," mcall.com, November 17, 2011 | 2 |
| "2 additional men claim Jerry Sandusky abused them as children, attorney general says," December 7, 2011, The Patriot News | 2 |
| "School: Sandusky denied job after background check," December 7, 2011, thetimes-tribune.com | 2 |
| "Penn State trustees could barely remember May briefing about Jerry Sandusky scandal," The Patriot News, January 19, 2012 | 2 |
| "Freeh faces big obstacles in PSU probe," The Patriot News, date unknown | 2 |

| | |
|---|---|
| "Penn State report shows limits of the Clery Act," Huffpost College, July 18, 2012 | 2 |
| "PSU trustee Garban resigns," post-gazette.com, July 20, 2012 | 2 |
| "Spanier's faculty status at PSU under scrutiny," philly.com, July 19, 2012 | 3 |
| "Penn State investigation brings clarity to the Clery Act," Wall Street Journal Law Blog, July 12, 2012 | 4 |
| "Second Mile kept secrets even from its board, some say," August 12, 2012, The Patriot News | 9 |
| "Prosecutors in Sandusky case want out of appeal," August 9, 2012, The Daily Collegian | 4 |
| Freeh Report in its entirety (p. 33, 34 missing) | 265 |
| Part of Freeh Report starting on p. 113 to the last exhibit | 149 |
| Remarks of Louis Freeh (announcing release of report) | 7 |
| Some sort of unsigned conspiracy narrative | 6 |
| Blank pages | 3 |