**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RYAN BAGWELL**,<br><br>               Plaintiff,<br><br>       v.<br><br>**UNITED STATES DEPARTMENT OF JUSTICE**,<br>               Defendant. | Case No. 15-cv-00531 (CRC) |

**MEMORANDUM OPINION AND ORDER**

      Plaintiff Ryan Bagwell, a Pennsylvania State University alumnus, seeks to uncover public records related to the University's role in the child-sex-abuse scandal surrounding its former assistant football coach Jerry Sandusky.  Compl. ¶ 3.  On April 30, 2014, Bagwell lodged a Freedom of Information Act ("FOIA") request with the Executive Office for United States Attorneys ("EOUSA"), requesting "access to any and all records of investigations between November 1, 2011 and [April 30, 2014] that pertain to allegations of child sexual abuse that occurred on the campus of The Pennsylvania State University."  Id. ¶ 5.  Bagwell's interest in these particular records stems from a now-closed federal criminal investigation of the Sandusky matter and an independent investigation into the school's handling of it conducted by former FBI Director Louis J. Freeh and his law firm.  Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 1–2.

      After some back-and-forth involving Bagwell, EOUSA's FOIA/Privacy Act office, and DOJ's Office of Information Policy ("OIP"), EOUSA provided Bagwell with a final response to his FOIA request on July 8, 2015, several months after Bagwell filed this action.  It released 517 pages of records and withheld 104 pages in full.  Id. at 4.  It also withheld over 2,700 pages of records and 86 gigabytes of electronic information that it never reviewed but instead categorically labeled "grand jury information" or "grand jury material."  Id.; Def.'s Mem. Supp. Mot. Summ. J. 8–9.

DOJ has now moved for summary judgment, contending that it has produced all of the responsive records to which Bagwell is entitled, and Bagwell has cross-moved for summary judgment, contending that DOJ has not met its burden to show that the withheld records are exempt from FOIA's disclosure requirements. Because the Court cannot determine—based on the declarations and Vaughn Index provided by DOJ—whether the search for responsive records was adequate or to what degree any FOIA exemptions shield the withheld documents from disclosure, it will defer resolution of the motions to allow DOJ an opportunity to supplement its documentation.

## I.     Standard of Review

Congress passed FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Am. Civil Liberties Union v. U.S. Dep't of Justice, 655 F.3d 1, 5 (D.C. Cir. 2011). The statute imposes a general obligation on the government to provide records to the public. 5 U.S.C. § 552(a). Although FOIA provides for exceptions to this general obligation to disclose, 5 U.S.C. § 552(b), "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed," NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). Thus, FOIA "'exemptions are explicitly made exclusive,'" Milner v. U.S. Dep't of Navy, 562 U.S. 562, 565 (2011) (citing EPA v. Mink, 410 U.S. 73, 79 (1973)), and they "must be 'narrowly construed,'" id. (citing FBI v. Abramson, 456 U.S. 615, 630 (1982)).

FOIA cases are appropriately decided on cross-motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In deciding a motion for summary judgment, the Court assumes the truth of the non-movant's evidence and draws all reasonable inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The government bears the burden to establish that its claimed exemptions apply to *each* document for which it invokes an exemption. Am. Civil Liberties Union v. U.S. Dep't of

Def., 628 F.3d 612, 619 (D.C. Cir. 2011). The government cannot satisfy this burden with affidavits that are vague or conclusory, or merely parrot the statutory standard. Consumer Fed'n of Am. v. U.S. Dep't of Agric., 455 F.3d 283, 287 (D.C. Cir. 2006). The declarations must describe the justifications for withholding in "specific detail, demonstrat[ing] that the information withheld logically falls within the claimed exemption." Am. Civil Liberties Union, 628 F.3d at 619. "When demonstrating that a FOIA exemption applies to some portion of a document withheld, the agency must also provide a *detailed justification* for its non-segregability," Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002) (emphasis added), and the agency should "describe what portion of the information is non-exempt and how that material is dispersed throughout the document," Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

**II.    Analysis**

Both parties' motions for summary judgment revolve around four main issues: (1) whether DOJ's search for responsive records was adequate; (2) whether DOJ is operating under the correct legal standard for withholding "grand jury material"; (3) whether DOJ's Vaughn Index is adequate; and (4) whether DOJ has satisfied its segregability obligations. The Court will discuss each in turn.

    A.    Adequacy of the Search

The Court cannot conclude, based on the record before it, that DOJ's search for responsive records was adequate. "[A]n agency responding to a FOIA request must 'conduct[] a search reasonably calculated to uncover all relevant documents,' and, if challenged, must demonstrate 'beyond material doubt' that the search was reasonable." Truitt v. U.S. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990) (alteration in original) (quoting Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). "'The issue is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate.' The adequacy of an agency's search is measured by a 'standard of reasonableness,' and

is 'dependent upon the circumstances of the case.'" Id. (quoting Weisberg, 705 F.2d at 1351). "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Id. Furthermore, "[i]n order to establish the adequacy of a search, agency affidavits must be . . . 'relatively detailed and non-conclusory, and . . . submitted in good faith.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)). These "affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" Id. (quoting SafeCard Servs., 926 at 1200).

At present, DOJ has failed to demonstrate beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents. First, the FOIA contact person for the United States Attorney's Office for the Middle District of Pennsylvania ("USAO/MDPA") attests to having searched "all systems of records located within the USAO/MDPA that were likely to contain responsive records to Plaintiff's request," Decl. of Jodi Matuszewski ¶ 15, but does not indicate whether this search included the office's email system. Clearly, DOJ considered certain emails to be responsive to Bagwell's request, as it acknowledged in its Vaughn Index that it withheld some "email conversations among Assistant United States Attorneys." Vaughn Index – EOUSA, ECF No. 12-5. The Court has no way of knowing, however, the method by which DOJ searched for and located those particular emails and thus cannot determine whether the search was likely to have captured all responsive emails. Second, the Court's confusion over the status of any email search is heightened by the public remarks of former FBI Director Freeh, who conducted the independent investigation into the Sandusky matter "in parallel with several other active investigations by agencies and governmental authorities, including the . . . United States Attorney [for the Middle District of Pennsylvania]." Remarks of Louis Freeh, July 12, 2012, ECF No. 13-8. Mr. Freeh stated that he "continuously interfaced and cooperated with those agencies and

4

authorities," id., which at least suggests that a record of communication may exist between his firm and USAO/MDPA regarding the investigation. While "an agency's failure to find a particular document does not necessarily indicate that its search was inadequate," North v. U.S. Dep't of Justice, 774 F. Supp. 2d 217, 222 (D.D.C. 2011), in this instance the search's apparent failure to uncover any material along these lines raises a legitimate question as to thoroughness of the search. The current record thus leaves the Court in substantial doubt as to the sufficiency of DOJ's search.

### B.  Grand Jury Material

DOJ has also failed adequately to justify its invocation of FOIA Exemption (b)(3), specifically as it relates to what DOJ labels "grand jury material." Def.'s Mem. Supp. Mot. Summ. J. 9. This exemption "permits an agency to withhold material 'specifically exempted from disclosure by statute . . . provided that such statute [requires withholding] in such a manner as to leave no discretion on the issue.' 5 U.S.C. § 552(b)(3)." Senate of the Commonwealth of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice, 823 F.2d 574, 582 (D.C. Cir. 1987). As relevant here, "[t]he Federal Rules of Criminal Procedure, in turn, prohibit . . . disclosure of 'matters occurring before [a] grand jury.' Fed. R. Crim. P. 6(e)(2). Relying on the incorporation of Rule 6(e) within exemption (b)(3)," id., DOJ here contends that "grand jury material is categorically exempt," and claims that "it is the customary practice of EOUSA when it receives requests for 'all records' as in this case, to inform the USAO to respond with all responsive records except for materials related to the grand jury, which are exempt as a matter of law." Def.'s Mem. Supp. Mot. Summ. J. 9. Not all material that relates to a grand jury, however, is exempt as a matter of law.

The Court of Appeals for the D.C. Circuit has held that "[t]here is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers." Rather,

> [t]he touchstone is whether disclosure would tend to reveal some secret aspect of the grand jury's investigation[—]such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations

> or questions of jurors, and the like. The disclosure of information coincidentally before the grand jury [which can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury is not prohibited.

Senate of Puerto Rico, 823 F.2d at 582 (internal quotation marks omitted). This approach makes sense from a policy perspective as well: "Automatically sealing all that a grand jury sees or hears would enable the government to shield any information from public view indefinitely by the simple expedient of presenting it to the grand jury." Id.

This Court "recognize[s] the importance of maintaining the secrecy of grand jury proceedings, and acknowledge[s] the 'necessarily broad' scope of Rule 6(e)." Id. at 584 (quoting Fund for Constitutional Gov't v. Nat'l Archives & Records Serv., 656 F.2d 856, 866 (D.C. Cir. 1981)). And "[i]t may turn out, in this case, that most, or even all, of the material withheld pursuant to exemption (b)(3) cannot be disclosed without compromising the secrecy of a grand jury's deliberations." Id. But as in Senate of Puerto Rico, DOJ has "not yet supplied the information a court must have in order to intelligently make that judgment." Id. DOJ does provide some information on this front, but not enough. For instance, it asserts that it "invoked Exemption 3 to withhold names of grand jury witnesses," correctly observing that "Exemption 3 applies to the identities of" those witnesses. Def.'s Mem. Supp. Mot. Summ. J. 9. It also implies that it withheld a draft indictment, which "is most assuredly a document that reveals the strategy and direction of a grand jury investigation." Id. Without any additional specificity as to what documents and files it withheld, however, DOJ has not demonstrated—and the Court cannot determine—that all 2,700 pages and 86 gigabytes of withheld material would reveal some secret aspect of the grand jury's proceedings or deliberations. The Court is further troubled by the possibility that no review was ever conducted of the "records related to the grand jury proceedings" in the first place. Matuszewski Decl. ¶ 14. Without such a review, it is unclear how EOUSA could determine that the exemption applies, let alone "suppl[y] the information a court must have in order to intelligently

make [the] judgment" that the material it withheld would reveal some secret aspect of the grand jury's inner workings or investigation. Senate of Puerto Rico, 823 F.2d at 584.

Under Senate of Puerto Rico, it is insufficient for an agency to withhold documents merely because those documents had been the subject of a subpoena or at some point were before a grand jury. Id. "[U]nless" the fact that "material has been presented to the grand jury . . . automatically exempts the material [from disclosure], a position [the D.C. Circuit] reject[s], it is incumbent upon [a court] to require some affirmative demonstration of a nexus between disclosure and revelation of a protected aspect of the grand jury's investigation." Id. Unless and until DOJ makes that affirmative demonstration, it cannot rely on Exemption (b)(3) to shield from disclosure everything it considers to be in some way "related" to the grand jury's proceedings.

      C.      DOJ's *Vaughn* Index

"The measure of a Vaughn index is its descriptive accuracy," King v. U.S. Dep't of Justice, 830 F.2d 210, 225 (D.C. Cir. 1987), and DOJ's Vaughn Index fails to measure up. To achieve the necessary level of descriptive accuracy, "[a] withholding agency [generally] must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information." Id. at 223–24 (D.C. Cir. 1987). "Vaughn's call for specificity imposes on the agency the burden of demonstrating applicability of the exemptions invoked *as to each document or segment withheld*." Id. at 224. Most importantly, "[c]ategorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." Id.

Therefore, "[i]f the government chooses to submit a short Vaughn Index containing abbreviated descriptions, it must supplement the index with *detailed* affidavits that do more than merely repeat the same *generalized* categorization of content." Am. Immigration Council v. U.S. Dep't of Homeland Sec., 950 F. Supp. 2d 221, 236-37 (D.D.C. 2013) (emphasis added) (citing

Judicial Watch, Inc. v. FDA, 449 F.3d 141, 146 (D.C. Cir. 2006); Coastal States Gas Corp. v. U.S. Dep't of Energy, 617 F.2d 854, 861 (D.C. Cir. 1980) (index identifying 'who wrote the memorandum, to whom it was addressed, its date, and a brief description of the memorandum,' accompanied by affidavits drafted in 'conclusory terms' deemed insufficient)). So "[w]hile the government need not furnish repetitive descriptions of the same type of document and may describe *commonalities* among its withholdings, it must avoid resorting to explanation in *generalities*." Id. At the same time, a "'document-by-document' description in the Vaughn Index may not always be necessary, particularly when the withholdings comprise multiple, duplicative records and when the government's supporting affidavits are 'sufficiently detailed to allow the district court to fairly evaluate' the application of a claimed exemption to distinct categories of documents." Id. (quoting Gallant v. NLRB, 26 F.3d 168, 173 (D.C. Cir. 1994)).

The four-page Vaughn Index DOJ submits is plainly insufficient under the King standard. In addition to being exceptionally short, its descriptions of withheld documents are quite general and vague, and it links categories of withheld documents to corresponding FOIA exemptions in a purely conclusory manner. The affidavits, too, merely parrot the statutory standards that correspond to each exemption rather than provide any new detail. When an agency's "declarations and Vaughn index recite the general elements of the [claimed FOIA exemption] without explaining in relative detail *how they apply* to the documents in question," it has not met its burden to demonstrate that it withheld each document properly. Envtl. Integrity Project v. Small Bus. Admin., No. 1:13-CV-01962-CRC, 2015 WL 4647926, at *3 (D.D.C. Aug. 5, 2015) (emphasis added). DOJ has failed to meet its burden here.[1]

---

[1] The Court is mindful, with respect to grand jury material, that listing individual records in a Vaughn Index could defeat the very secrecy interests that Rule 6(e) is designed to protect. DOJ may, therefore, describe the specific types of grand jury material it ultimately decides to withhold

Because the Court finds that DOJ's "Vaughn Index and explanations of the withholdings are insufficient as a whole," it cannot grant summary judgment for the agency. Id. As in American Immigration Council, if DOJ "does not produce the contested records, [it] must submit revised documentation that is sufficiently detailed and comprehensive to meet the evidentiary standards set out in King, 830 F.2d at 224, as well as the exemption-specific standards . . . ." Id.

D.      DOJ's Demonstration of Nonsegregability

Under FOIA, an agency is required to provide "[a]ny reasonably segregable portion of a record . . . to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). A "District Court ha[s] an affirmative duty to consider the segregability issue" and make a segregability finding. Trans-Pac. Policing Agreement v. U.S. Customs Serv., 177 F.3d 1022, 1028 (D.C. Cir. 1999). DOJ contends that it has fulfilled its segregability obligation because one of its employees "attested that no reasonably segregable information has been withheld." Def.'s Mem. Supp. Mot. Summ. J. 20–21. Without a sufficient Vaughn Index or more-detailed declarations, however, the Court cannot conclude that DOJ has fulfilled its segregability obligation.

"In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability. However, the agency is not required to provide so much detail that the exempt material would be effectively disclosed." Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting Mead Data, 566 F.2d at 261). When an agency provides a requestor with a "combination" of affidavits stating that all reasonably segregable information has been released, along with "a comprehensive

---

on a categorical basis either in a revised declaration or in a more-thorough Vaughn Index. What is most important is that DOJ actually review the materials against the standards set forth in Senate of Puerto Rico and make the required affirmative showing.

Vaughn index, describing each document withheld, as well as the exemption under which it was withheld," then it has taken action "sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document cannot be further segregated." Id.  Here, however, all the Court has before it is the vague declaration of an employee.  The Court lacks both an adequate "Vaughn ind[ex] and copies of the redacted records," Higgins v. U.S. Dep't of Justice, 919 F. Supp. 2d 131, 152 (D.D.C. 2013), which limits its ability to find that "all reasonably segregable records and portions of records have been released to [the] plaintiff," id.  As a result, the Court is unable to make a segregability finding at this time.

### III. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendant shall conduct any necessary additional searches, and file a supplemental memorandum in support of its motion for summary judgment, including additional affidavits and a revised Vaughn index, on or before January 29, 2016.

**ORDERED** that Plaintiff shall respond to Defendant's supplemental submissions on or before February 12, 2016.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date:   December 18, 2015