IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RYAN BAGWELL ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:15-cv-00531 (CRC) |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| JUSTICE ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR EXTENSION OF TIME AND CROSS MOTION
FOR A MODIFIED BRIEFING SCHEDULE**

Plaintiff Ryan Bagwell hereby files this Response to Defendant's Motion for Extension of Time (ECF No. 46) and further moves the Court to modify its May 15, 2017 order establishing a briefing schedule. Defendant is seeking a one-year stay of this case in order to process a significant number of records that it failed to process in accordance with the Court's October 27, 2016 order despite confirming to the Court that it would do precisely that. This is an absurd request that the Court should roundly reject, and for the reasons more fully described below, Plaintiff asks the Court to deny Defendant's motion and grant his cross-motion.

**History of Defendant's Efforts to Process Responsive Records**

Defendant's first estimate of the number of records it anticipated processing came on January 29, 2016, when it estimated it would need to process 23,000 pages of emails and 273,000 pages of grand jury material (see Defendant's Motion to Continue, ECF No. 18).

Defendant began to process the outstanding records, but suddenly stopped in April 2016 after demanding Plaintiff pay thousands of dollars in fees (see Joint Status Report, ECF No. 24). Plaintiff requested a waiver of fees, which Defendant denied without merit. After the Court indicated during a hearing that it would likely grant Plaintiff's fee-waiver request, Defendant dropped its demand for fees on October 13, 2016 (see Defendant's Notice, ECF No. 36). For its frivolous denial of Plaintiff's fee-waiver request, Defendant effectively gained precisely what it sought from the Court, and was denied by the Court, in January 2016 - a stay.

With the Court ending the 10-month delay forced by Defendant's meritless position, Defendant revised its workload estimate on October 26, 2017 to include 1) 273,436 pages "ranging from the Pennsylvania Attorney General to banking information;" 2) 1,496 emails, and; 3) approximately 3,147 files that "may be subject to Grand Jury Exemption" (see Joint Proposed Production Schedule, ECF No. 38). Defendant estimated it would take six months to complete the production of those documents. Id. The Court ordered Defendant to complete the production by May 1, 2017 (see Minute Order of October 27, 2016).

After six months of processing responsive records, Defendant summarized its production efforts on May 1, 2017. It stated that 1) it was able to reduce the universe of records it needed to review to 121,000 by removing duplicates and 2) that 90,000 pages were not responsive to the request (see Joint Status Report, ECF No. 42). Based on Defendant's description, of the hundreds of thousands of pages of records it informed the Court it would have to review, Defendant only actually reviewed approximately 31,000 pages, substantially less than what it originally stated it would have to review. Ultimately, Defendant chose to release a mere 1,870 pages of records in whole or in part; refer 329 "docs" to other agencies, and withhold 1,420 pages in their entirety.

Id. That means approximately 27,710 pages are unaccounted for. Notwithstanding, Defendant told the Court it "is fairly confident that all records have been reviewed and processed" and further committed to providing a "complete update" to the Court, including a Vaughn Index and declarations, by May 30, 2017. Id.

However, the day after committing to providing a Vaughn Index and declarations, on May 2, 2017, Defendant emailed Plaintiff to inform him that "the May 30th date needs to move back 30 days" and asked for his position on the matter. Before Plaintiff could provide an alternative proposal, which would have attempted to narrow the issues in future summary judgment motion, Defendant filed Notice to the Court that it was now "requesting" an additional 30 days to provide the Vaughn index and declarations.

Because it appeared that Defendant was unwilling to make any effort to narrow the issues that would be argued in a summary judgment motion (just as it has for the duration of this case), and because of the numerous inconsistencies in Defendant's status reports, Plaintiff moved the Court for a briefing schedule that was similar to the schedule established by the Court in 2015 (ECF No. 44)[1]. Ultimately, the Court established a briefing schedule that was proposed by Defendant.

Plaintiff had, and continues to have, a number of concerns about Defendant's position with regard to its records production to date. Those concerns, which Plaintiff planned to challenge in a summary judgment motion if not assuaged by Defendant's declarations or by other means, include:

---

[1] In accordance with District rules, Plaintiff sought Defendant's position regarding the proposed briefing schedule. Defendant opposed the schedule but, other than incorrectly insisting that July 5, 2017 fell on a holiday weekend, did not provide an alternative schedule or explain why Plaintiff's proposal was unacceptable. Defendant filed a response opposing the motion, which contained an alternative briefing schedule.

1. Only two emails between Defendant and the law firm of Freeh, Sporkin and Sullivan (FSS) were produced, despite Louis Freeh's public statements that his firm conducted a private investigation of the Sandusky matter "in parallel with several other active investigations by agencies and governmental authorities, including the . . . United States Attorney [for the Middle District of Pennsylvania]" and "continuously interfaced" with those agencies. (see ECF No. 17). It is Plaintiff's position that Defendant has not produced all responsive emails with FSS.

2. Defendant decided that 74% (90,000 pages) of the universe of records initially thought to be responsive were not responsive to the request, but has not explained why. A nexus between those records and the subject of the FOIA request clearly exists, and Plaintiff's position is that those 90,000 records are being improperly withheld.

3. Records referred to other agencies for processing are records "of" Defendant, and therefore, Defendant has a duty under the FOIA to ensure they are processed in accordance with the Court's order. Defendant's failure to process, or ensure they are processed, constitutes a "withholding" because the "net effect" of referring responsive records to five other agencies has significantly impaired Plaintiff's ability to obtain the records of significantly increased the amount of time Plaintiff must wait to obtain them. See *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir.1983). Defendant has declined to inform Plaintiff whether it will attempt to argue the validity of any exemptions in this case on behalf of the agencies to which responsive records were referred, or if it will argue it has no duty to process those records.

4. Defendant has failed to account for approximately 27, 710 pages of records, and Plaintiff's position is that those records have been improperly withheld.

5.     Plaintiff believes that approximately 30 records released in part have been improperly redacted.

Unfortunately, because Defendant has refused to work with Plaintiff to resolve these issues, the only way Plaintiff can verify Defendant did not improperly withhold these records is to ensure the withholdings are justified though evidentiary submissions as part of a summary judgment filing. And if Plaintiff is successful in challenging Defendant's withholding on the issues described above, there will likely be another significant period of review and release, potentially dragging out this case for an additional year or more.

**Defendant's Latest Production Woes**

Despite Defendant's stated efforts to comply with the Court's production order since November 2016, and its statement that that "EOUSA is fairly confident that all records have been reviewed and processed," (see Joint Status Report, ECF No. 42), Defendant, now claims it "inadvertently" failed to process nearly half a million pages of records, which consist of the following:

1. 249,000 pages of documents produced by Penn State University pursuant to a federal grand jury subpoena;

2. 9,500 pages of documents produced by financial institutions;

3. a list of young residents of Centre County, Pennsylvania who died by suicide, accidental or undetermined causes;

4. 1,800 pages produced by the Pennsylvania Governor's Office of Budget;

5. four pages that originated from Google, Inc. that includes account information of a third-party individual, and;

6. 32 pages of documents from the filing cabinets of a third-party individual at PSU.

7. 243,000 pages of records "provided by a state law enforcement agency related to state criminal proceedings."

8. 19 CDs produced by PSU that contain encrypted data for which Defendant cannot locate a password (Plaintiff, as more fully described below, believes the passwords are contained in the records that Defendant has partially released to Plaintiff thus far).

See <u>Declaration of D. Brian Simpson</u> ("Simpson Declaration"), June 15, 201[7] (ECF No. 46-1). ¶ 14 - 20.

In response to Defendant's motion, Plaintiff, by email, offered to help narrow the scope of Defendant's workload. Specifically, Plaintiff stated the following:

> Dear Ms. Campbell,
>
> I am reiterating my interest in helping DOJ to narrow the universe of records to review. I suggest that you organize a conference call with with EOUSA, the district and myself to allow me to get a sense of what kind of records are outstanding, i.e. grand jury transcripts, emails, etc. Based on that conversation, I may be willing to exclude certain categories of records the request. This procedure worked well during a separate FOIA action I filed a few years ago.

Defendant did not respond to Plaintiff's latest offer.

Instead, Defendant seeks, for at least a second time in this case, a one-year stay to process records that it was ordered to process by May 1, 2017. This is an absurd request, considering Defendant's numerous prior efforts to avoid or delay processing responsive records throughout the duration of this case. It is highly likely that Defendant will employ techniques similar to what it previously used to remove duplicate documents from the expanded universe of records, significantly reducing the number it will be required to

review. It is also likely that Defendant will, as it has before, deem a significant number of records not responsive to Plaintiff's request for information.

Furthermore, Defendant's claim that its failure to process these records was "inadvertent" is not credible. On October 26, 2016, when Defendant proposed a production schedule to the Court, it specifically acknowledged that "banking information" and information from the Pennsylvania Attorney General was among the records that needed to be processed, and estimated that it would take approximately six months to complete the production of that information (see Joint Status Report, ECF No. 38). Yet for some inexplicable reason, Defendant failed to process the very records that it told the Court it would need six months to process. The Court should not reward Defendant's bad behavior by granting it another 12 months to do precisely what it committed to doing nearly eight months ago.

Finally, it is particularly disturbing that Defendant has decided the 243,000 pages of records from a state law enforcement agency "will not be provided to the LTSC and uploaded into the Relativity program at this time," a decision that amounts to a blatant a refusal to process responsive records. Defendant has not provided any justification for this decision. To be clear, the Court already denied one attempt by Defendant to withhold records that it had failed to review. See Order, March 3, 2016, ECF No. 21 (citing Bagwell v. U.S. Dep't of Justice, No. 15-CV-00531 (CRC), 2015 WL 9272836, at *1 (D.D.C. Dec. 18, 2015)). It appears that Defendant is preparing to proceed in the same manner with regard to these records. The Court should not let that happen.

**Cross-Motion to Modify the May 15, 2017 Briefing Schedule
and Establish a new Production Schedule**

Considering Defendant's robust history of delays in this case, Plaintiff asks the Court to deny Defendant's motion and grant Plaintiff's cross motion to modify the Court's May 15, 2017 order to the following effect:

1.  Defendant shall continue to submit a <u>Vaughn</u> index and evidentiary declarations no later than June 30, 2017 pertaining to the records processed prior to this motion. Plaintiff believes this will provide much-needed clarity about the issues pertaining to Defendant's previous production efforts and assist with case management moving forward;

2.  If Defendant intends to withhold the 243,000 pages of records that were provided by a state law enforcement agency, it shall justify the withholding as part of its June 30, 2017 submissions. Otherwise, Defendant shall immediately commence processing these records which it agreed to process in October 2016.

3.  Defendant shall produce all outstanding records on a monthly, rolling basis, beginning July 30, 2017, and file a status report every 60 days beginning August 30, 2017. Defendant shall complete the production by December 31, 2017;

4.  As part of its efforts to process the outstanding records, Defendant will take all reasonable steps to access the information contained on the 19 encrypted CDs, including, but not limited to, 1) attempting to use the passwords contained in the attached email (Exhibit A) from PSU attorneys that was provided to Plaintiff by Defendant; 2) requesting the password from PSU attorneys, and 3) employing other techniques that law enforcement would typically use to access encrypted information, and;

4.  Eliminate the briefing schedule established in the May 15, 2017 order.

        Respectfully submitted,

        */s/ Ryan Bagwell,* Plaintiff
        444 Upham St.
        Melrose, MA 02176
        (608) 466-6195
        ryan@ryanbagwell.com