## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RYAN BAGWELL** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:15-cv-00531 (CRC) |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **JUSTICE** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## PLAINTIFF'S REPLY TO DEFENDANT'S REPLY IN
## SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff Ryan Bagwell hereby replies to Defendant's Reply in Support of its Motion for

Summary Judgment (ECF No. 64). Defendant makes numerous statements that are unsupported

by the evidence on record; raises new reasons for withholding that are unsupported by its

Vaughn index; relies on a declaration that has no bearing on records that are the subject of this

motion; admits that its investigation of events at Penn State University ("PSU") and Gerald

Sandusky was never likely to result in an actual law enforcement proceeding, thereby making its

claim of the attorney-work product privilege in applicable to the records at issue, and; makes

incorrect and irrelevant statements about other litigation brought by Plaintiff in an attempt to

disparage Plaintiff's efforts to exercise his right to obtain public records in the possession of a

federal agency. Plaintiff again asks the Court to DENY Defendant's motion and GRANT

Plaintiff's motion.

## ARGUMENT

**I.      Adequacy of Defendant's Search.**

Defendant does not deny Plaintiff's contention that the four search terms used to identify relevant e-mail messages ("Pennsylvania State University," "Child sexual abuse and Pennsylvania State University," "Sandusky," and "Freeh") was inadequate. Defendant's declarations, particularly the Second Simpson Declaration, fail to state that it believes those search terms were "reasonably expected to produce the information requested." *DiBacco v. U.S. Army*, 795 F.3d 178 (D.C. Cir. 2015). Instead, the Second Simpson Declaration only states that the search terms were identified by USAO-MDPA "in consultation with EOUSA-FOIA." Second Simpson Decl. ¶ 12. It does not explain why Defendant believes those search terms were likely to uncover all responsive emails.

The D.C. Circuit Court of Appeals in *DiBacco* recently held that an adequate list of search terms consisted of "a variety of keywords" including "common misspellings of various codenames, along with pseudonyms and codewords." *Id*. Here, Defendant's list of only four terms is far less substantial than the "variety" that was found to be adequate in *DiBacco*. Nor did defendant make any attempt to include alternate spellings of its chosen terms, i.e. "PSU" or "Penn State" in addition to "Pennsylvania State University."

Finally, Defendant appears to admit in its reply that the list of four search terms was not tailored to identify e-mails responsive to Plaintiff's FOIA request. As it states in its reply, the terms were "phrased so broadly that in most instances it uncovered records that were unrelated to the Sandusky/PSU child abuse matter" and required Defendant to search 90,000 pages of unrelated records. Reply of Def., p. 3. While Defendant uses this anecdote as an example of the

adequacy of its search, it is clear evidence of the lack of thought that went into compiling a

sufficient list of search terms.

## II.    Defendant has failed to prove that documents obtained from the Pennsylvania Attorney General are exempt from the FOIA's disclosure requirements.

As a threshold matter, Plaintiff is not contesting Defendant's decision to withhold

transcripts of Pennsylvania grand juries that were provided to Defendant. Instead, Plaintiff is

contesting the withholding of 243,000 pages of other records provided to Defendant by the

Pennsylvania Office of Attorney General ("OAG"), which Defendant has failed to adequately

justify.

Defendant only cites Exemption 7(A) in its withholding, which exempts from public

release information that "could reasonably be expected to interfere with enforcement

proceedings." 5 U.S.C. § 552(b)(7)(A). Defendant contends that the mere existence of related,

ongoing state law enforcement proceedings is enough to establish that release of these records

would interfere with these proceedings. However, it has been well established that when

invoking Exemption 7(A), an agency must also demonstrate that the release of the information

would reasonably be expected to cause some articulable harm. *NLRB v. Robbins Tire & Rubber

Co.,* 437 U.S. 214 (1978). To make this demonstration generically, Defendant must establish

categories under which these documents fall, review and assign each document to the proper

category, and explain how the release of each category would interfere with the ongoing

proceeding. *Bevis v. Dep't of State*, 801 F.2d 1386, 1389-90, 255 U.S. App. D.C. 347 (D.C. Cir.

1986).

Defendant's claim that it has "described the category of records to allow the Court to

assess functionally whether their release would risk interference with criminal investigations

and/or post-convictions and/or new trials," Reply of Def., p. 4, is patently false. The record before the Court is devoid of evidence that any review of the records was ever conducted, much less a review in which these records were categorized in any way. Without conducting a review of the records and establishing appropriate categories, Defendant simply cannot meet its burden to demonstrate that any harm would arise from the release of the 243,000 pages of records, and summary judgment should be granted in Plaintiff's favor.

1.  **Defendant has not demonstrated that state grand jury rules prohibit disclosure of the 243,000 pages of records.**

While Defendant has not claimed that Exemption 3 and Rule 6(e), which exempt disclosure of documents that would reveal "matters occurring before the grand jury," protect these records, Defendant implicitly invokes this exemption by stating that the 243,000 pages "are covered by state grand jury proceedings." Reply of Def., p. 5. Therefore, out of an abundance of caution, it is necessary for Plaintiff to address a claim that the 243,000 pages of records are protected by state grand jury rules.

To support its claim of state grand jury protection, Defendant cites a letter from Jennifer Selber, the OAG's Executive Deputy Attorney General (the "Selber Letter"). The Selber Letter states that the OAG's "investigation of Sandusky, PSU, and TSM was done through two Statewide Investigating Grand Juries" and concludes that "all of the materials gathered by the OAG and provided to [USAO-MDPA] were subject to grand jury secrecy." Selber Letter, p. 1. However, the Selber Letter cites no provision of Pennsylvania law that supports the claim that all materials obtained through a grand jury process must be protected, because no such authority exists in Pennsylvania.

4

Instead, "Pennsylvania law is consistent with Federal law" when it comes to grand jury secrecy. Selber Letter, p. 1. And it is well established under federal law that "[n]ot all material that relates to a grand jury, however, is exempt as a matter of law." *Bagwell v. Department of Justice*, No. 15-cv-00531 (CRC) (D.D.C. December 18, 2015). Documents are only protected if they would "'tend to reveal some secret aspect of the grand jury's investigation' such matters as 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jury, and the like.'" *Senate of the Commonwealth of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987) (internal citation omitted); see also *Stolt-Nielsen Transp. Group Ltd. v. United States*, 534 F.3d 728, 732 (D.C. Cir. 2008).

Similarly, Title 42 of the Pennsylvania Consolidated Statutes only restricts the revelation of "matters occurring before the grand jury," 42 Pa.C.S. § 4549(b), a standard that is nearly identical to the holdings of federal courts.

There is simply nothing in Pennsylvania law that imposes a blanket prohibition on the release of any or all information obtained through the grand jury process. Federal standards of grand jury secrecy apply to these records, despite the fact that they may have found their way to a Pennsylvania grand jury at some point.

Thus, to successfully claim that each of the 243,000 pages of records may be withheld, Defendant must demonstrate they contain information that would reveal matters that occurred before a grand jury. Information such as witness and juror identities, testimony to the grand jury, its strategy, direction, and deliberations is generally protected. *Senate of Puerto Rico, supra*. But neither Defendant nor OAG have provided any evidence that even suggests, much less proves,

that any of the 243,000 pages of records at issue here fall into any category that would typically be protected. Information submitted to the grand jury as exhibits are not protected, *id*., including records created independently of the grand jury process. *Washington Post Co. v. U.S. Dep't of Justice*, 863 F.2d 96, 100 (D.C. Cir. 1988).

Notwithstanding the fundamental flaws in Defendant and OAG's position, the Selber Letter cites *Cf Camiolo v. State Farm Fire and Cas. Co.,* 334 F.3d 345, 357- 359 (3d Cir. 2003), to support of its argument that the 243,000 pages at issue cannot be disclosed. However, the circumstances of that case are substantially different than the matter before this Court.

In *Camiolo,* a party to a civil case in federal district court moved to compel production of county grand jury transcripts by a county prosecutor during discovery. The Third Circuit ultimately held that federal courts should not compel disclosure of "matters occurring before the [state] grand jury" before the party seeking discovery formally petitions the judicial officer who possesses the supervisory authority to grant or deny such access.

*Camiolo* dealt with the disclosure of grand jury transcripts, which, if released, would clearly reveal "matters occurring before the grand jury." But in the instant matter, neither Defendant nor OAG have provided any evidence to prove that any of the withheld records would reveal matters that occurred before the grand jury. The *Camiolo* decision has no bearing on this case.

      **2.**      **Pennsylvania law does not govern the release of records in the possession of a federal agency, even if the records would not ordinarily be releasable by a state agency.**

The Selber Letter's final argument against release is that Pennsylvania's Criminal History Record Information Act ("CHRIA"), 18 Pa.C.S. §§ 9101-9183, prohibits the release of

information shared with Defendant. Assuming *arguendo* that OAG is correct, this argument must fail because the Supreme Court has held that when federal law mandates the release of information that state law protects, federal law reigns supreme. *Liner v. Jafco, Inc.,* 375 U.S. 301, 309, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964) ("[t]o [] federal statute and policy, conflicting state law and policy must yield. Constitution, Art. VI, cl. 2.");

Federal appellate courts have applied this principle to FOIA cases. For example, in *McDonnell v. U.S.*, 4 F.3d 1227 (3d Cir. 1993), the Court of Appeals held that the FOIA governs the release of state juvenile records in the possession of a federal agency, even if the records "would be non-disclosable under applicable state law." *Id.*, 110.

When records of a state agency are shared with a federal agency, federal law governs their release. The CHRIA, a Pennsylvania statute, simply does not protect records in the possession of Defendant, a federal agency.

In the civil discovery context, CHRIA does not provide "a blanket privilege against the discovery of police reports containing investigative information or complaints against third persons." *Benedict v. McMahon*, No. 15-6462 (E.D.Pa. July 12, 2016).

**III.    Because litigation had commenced before documents were referred to other agencies, Defendant has an obligation to prove that records referred and ultimately withheld are exempt from the FOIA's disclosure requirements.**

Defendant's rebuttal against Plaintiff's assertion that the referrals in this case don't amount to a "withholding" runs counter to the prevailing standard in this circuit. In *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir.1983), the court established a model set of regulations for agencies to use when crafting their own referral policies. However, as the court made clear, if the

agency does not follow the applicable regulations by the time FOIA litigation was filed, the

agency remains responsible for proving any applicable exemptions. The court wrote:

> If, in a given case, the "intent to control" test were satisfied but the agency to
> which the request was first submitted had not followed the procedures suggested
> above by the time litigation commenced, the district court would still have some
> options at its disposal that would enable it to ensure that the petitioner's request
> was processed expeditiously without sacrificing the benefits accruing from a
> substantive review by the originating agency. The court might, for example, allow
> the defendant agency to submit affidavits or present witnesses from the
> originating agency, explaining which documents are exempt and why.
> Alternatively, the court could require the originating agency to appear as a party
> to the suit pursuant to FED.R.CIV.P. 19(a).

*McGhee, 1112.* Defendant's contrary argument lacks any foundation in statute or case law, and

merely contends that an agency's regulations supercede the wisdom of this circuit's court of

appeals. Its argument is wholly without merit, and summary judgment should be granted in

Plaintiff's favor.

### 1.    Defendant cannot withhold records based on the purported intent of a requester.

It is necessary to address Defendant's passing claim that Plaintiff's motion should be

denied because, as Defendant posits without evidentiary support, the intent of filing this

litigation is to "circumvent his unfavorable judgments" before other federal and state courts.

Plaintiff is unaware of any part of the the FOIA permits an agency to withhold public records

based on what it claims is the intent of the requester, and Defendant has not identified any

provision that would do what it claims. Defendant has failed to provide any evidence that any of

the records sought by Plaintiff in this request had been previously sought unsuccessfully from

state or federal authorities. Indeed, this request seeks records in the the possession of Defendant,

a federal agency. Plaintiff's past litigation with state agencies and another federal agency is

irrelevant to this matter, which only seeks records of Defendant.

## IV.   Other exemptions

### 1.   Defendant's novel Exemption 3 claim is wholly unsupported by its declarations and *Vaughn* index.

In its reply, Defendant, for the first time, contends that the records at issue in this motion

are protected by The Child Victim's and Child Witness Rights Act, 18 U.S.C. § 3509(d). For

evidence, it relies on the Declaration of Princina Stone that Defendant purports to have attached

to its Renewed Motion for Summary Judgment. Reply of Def., p. 5. No such declaration was

attached to Defendant's Renewed Motion for Summary Judgment. However, to the extent that

Defendant is referring to the first Stone Declaration filed with the Court on August 28, 2015 in

support of its first motion for summary judgment, that declaration described Defendant's review

of a much smaller set of documents - 622 in total - whose fate was decided by the Court last

year. The first Stone Declaration does not describe any of the records at issue in this motion, and

is irrelevant to the instant matter.

Defendant has failed to offer any evidentiary support for its new argument that the

records at issue in this motion are protected by the The Child Victim's and Child Witness Rights

Act. Its *Vaughn* index (ECF No. 54-5) is devoid of any claim of protection by this statute. Not

even the Second Supplemental Declaration of Priscina Stone (ECF No. 54-4) asserts that any of

the documents at issue here are protected by 18 U.S.C. § 3509(d). This bizarre claim is

bewildering at best, and should be rejected by the Court.

### 2.   Exemption 5 and the attorney-work product privilege does not protect the the withheld documents because, as defendant admits, they were not prepared in anticipation of litigation.

As Plaintiff previously argued in his cross motion for summary judgment (ECF No. 61), for an agency to successfully invoke the attorney-work product privilege, it must demonstrate that the documents were prepared "in anticipation of litigation." For the privilege to apply, "the attorney who created the document must have 'had a subjective belief that litigation was a real possibility.'" *National Association of Criminal Defense Lawyers v. United States Department of Justice*, No. 15-5051 (D.C. Cir. July 19, 2017).

Defendant, in its Reply, admits that litigation was never anticipated. It wrote:

> [T]he Department of Education ("DOE") and the State of Pennsylvania led the investigation and prosecution of the Sandusky/PSU matter, and the District only provided support in the DOE investigation.

Reply of Def., p. 5. Because Defendant explicitly states that that USAO-MDPA only supported investigations of other agencies, and did not lead an investigation of its own, there can be no doubt that the attorneys on whose behalf the work-product privilege is being invoked never seriously believed that an actual enforcement action was sufficiently on the horizon for the privilege to attach to these documents. Such a stunning admission must negate any claim of work-product privilege protection by Defendant.

### 3.  Defendant's sweeping claims of Exemptions 6 and 7(C) are wholly unsupported by the evidence on record.

Defendant contends it is invoking Exemptions 6 and 7(C) to withhold "names and/or identifying information regarding the child victims in the Penn State child abuse investigation, local law enforcement officers, Federal law enforcement agents and support employees, third parties of investigative interest, and third parties who provided information to law enforcement."

Reply of Def., p. 10. However, its own *Vaughn* index does not support a finding that documents in their entirety may be withheld. For example, in Item 1, Defendant invoked the exemptions "to protect the names, telephone numbers, and other personally identifiable information of government attorneys assigned to or involved with the PSU/Sandusky investigation." *Vaughn* index, p. 2. However, Defendant has chosen to withhold the documents in their entirety instead of releasing versions of the documents with withheld information redacted. There is simply no reason for Defendant to withhold these documents in full when public information can be segregated and released.

In most cases where Defendant has invoked Exemptions 6 and 7(C), Defendant has also invoked the attorney-work product privilege. An attorney's work product is protected in full, and agencies are not required to release segregable information in a document protected by the work-product privilege. However, if the Court finds Defendant's invocation of the work-product privilege is improper, as Plaintiff has argued, it must order Defendant to release portions of the documents that are not the type of information that it seeks to protect, i.e. names, telephone numbers, and other personally identifiable information.

**4.      Defendant has provided absolutely no evidence that any of the documents at issue in this motion are protected by Exemption 7(D).**

Defendant for the first time asserts that some of the documents at issue in this motion are protected by Exemption 7(D). But Defendant has failed to produce a single iota of evidence that supports in any way the asserted 7(D) protection. Its *Vaughn* index doesn't indicate that any of the documents are protected by Exemption 7(D). The Stone Declaration (ECF No. 13) that Defendant points to as evidence of this protection pertains instead to documents that were previously withheld earlier in this case and already found to be exempt. Defendant cannot

successfully withhold documents under Exemption 7(D) without evidence, and summary judgment should be granted in Plaintiff's favor.

### 5. Defendant has not explained why it cannot segregate and release all non-exempt information.

The FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). It is the agency's burden to demonstrate it has complied with the FOIA's segregability requirement, which can be met by submitting 1) an adequate *Vaughn* index, and 2) a declaration attesting the agency has released all segregable material. See *Nat'l Sec. Counselors v. CIA*, No. 13-CV-1323 (BAH) (D.D.C. Aug. 15, 2013) (citing *Loving v. Dep't of Def.,* 550 F.3d at 41 (D.C. Cir. 2008), *Johnson v. Exec. Office for U.S. Attorneys,* 310 F.3d 771, 776 (D.C. Cir. 2002)).

Defendant correctly asserts that agencies are not required to release nonexempt information that is "inextricably intertwined with exempt portions." *Mead Data Central, Inc. v. United States Department of the Air Force, et al.*, 566 F.2d 242 (D.C. Cir. 1977). Information is "inextricably intertwined" when its segregation from exempt information would only reveal "disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Id.*, n. 54.

When an agency determines it is unable to release non-exempt portions that are "inextricably intertwined," it still bears the burden of proving its determination is correct. To meet its burden, "an agency should also describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead*

*Data[1]*. To prove it has met its segregability obligations, it must sufficiently explain why certain documents could not be further segregated. See, e.g. *Electronic Frontier Foundation v. United States Dept. of Justice*, 739 F.3d 1 (D.C. Cir. 2014); *Juarez v. Dep't of Justice, Drug Enforcement Administration*, 518 F.3d 54 (D.C. Cir. 2008); *Schoenman v. Federal Bureau of Investigation*, 132 F. Supp. 3d 124, (D.D.C. 2015).

Defendant "conducted a detailed, line-by-line review to satisfy EOUSA's reasonable segregability obligations" and asserts it has "released all reasonably segregable non-exempt information." Second Supp. Stone Decl. ¶ 69-70. However, Defendant has failed to "describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document" as the D.C. Circuit required in *Mead Data*. In fact, Defendant has failed to provide any explanation about <u>why</u> it determined the non-exempt portions cannot be released.

Defendant's failure to explain why it cannot release the non-exempt portions is significant because its own *Vaughn* index clearly demonstrates that segregable information is being withheld. For example, Defendant invoked exemptions 6 and 7(C) to protect "names, telephone numbers, and other personally identifiable" information in Item 8, which consists of letters from outside attorneys. *Vaughn* index, p. 12. Similar reasons for invoking exemptions 6 and 7(C) are made throughout. It is difficult to understand why Defendant cannot provide

---

[1] In *Mead Data*, the D.C. Circuit explained that "if only ten percent of the material is non-exempt and it is interspersed line-by-line throughout the document, an agency claim that it is not reasonably segregable because the cost of line-by-line analysis would be high and the result would be an essentially meaningless set of words and phrases might be accepted. On the other extreme, if a large proportion of the information in a document is non-exempt, and it is distributed in logically related groupings, the courts should require a high standard of proof for an agency claim that the burden of separation justifies nondisclosure or that disclosure of the non-exempt material would indirectly reveal the exempt information."

versions of these documents with names, telephone numbers and other personally identifiable information redacted when it did precisely that for other responsive records. Absent a sufficient reason for withholding the non-exempt portions, the Court must grant summary judgment in Plaintiff's favor.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully asks this court to **DENY** Defendant's motion and **GRANT** Plaintiff's motion.

Respectfully submitted,

_____

Ryan Bagwell
444 Upham St.
Melrose, MA 01720
(608) 466-6195
ryan@ryanbagwell.com