# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **RYAN BAGWELL**, |
| Plaintiff, |
| v. |
| **U.S. DEPARTMENT OF JUSTICE**, |
| Defendant. |

Case No. 15-cv-0531 (CRC)

## MEMORANDUM OPINION

Ryan Bagwell, an alumnus of Pennsylvania State University, filed a request under the Freedom of Information Act ("FOIA") with the Executive Office for United States Attorneys ("EOUSA") seeking records related to investigations into allegations of child sexual abuse on the University's campus. The parties have now filed cross-motions for summary judgment concerning three aspects of EOUSA's response: (1) its search of email accounts in the U.S. Attorney's Office for the Middle District of Pennsylvania, which oversaw a criminal investigation into the allegations; (2) its referral of records to other agencies for review; and (3) its withholding of records under FOIA Exemptions 5 and 7(A). The Court concludes—for the second time in this case—that the Department of Justice has failed to carry its burden of detailing an adequate search. It also finds that the Department has improperly withheld a set of records that it referred to the Department of Education and has inadequately justified its withholding of a set of Pennsylvania state grand jury materials under Exemption 7(A). However, the Court will sustain all but one of the Department's withholdings under Exemption 5. The Court will, accordingly, grant and deny both motions in part.

## I. Background

As this case has been here before, the Court will only briefly recount the relevant factual background. Both the U.S. Attorney's Office for the Middle District of Pennsylvania (the "U.S. Attorney's Office") and the Pennsylvania Attorney General's Office oversaw criminal investigations into allegations of child sexual abuse by former Penn State assistant football coach Jerry Sandusky. In addition, former FBI Director Louis Freeh and his law firm were retained by Penn State's Board of Trustees to conduct an internal investigation into the Sandusky matter. Seeking material related to those investigations, in April 2014, Plaintiff Ryan Bagwell filed a FOIA request with EOUSA for "any and all records of investigations between November 1, 2011 and [April 30, 2014] that pertain to allegations of child sexual abuse that occurred on the campus of The Pennsylvania State University." Compl. ¶ 5. When EOUSA failed to timely respond, Bagwell filed suit against EOUSA's parent agency, the Department of Justice.

After the suit was filed, EOUSA produced 517 pages of records to Bagwell and withheld another 104 pages. The parties then filed cross-motions for summary judgment, with Bagwell challenging the adequacy of the Department's search and its withholding of documents. The Court concluded that the Department had not provided enough information to allow for resolution of the motions at that juncture. Bagwell v. U.S. Dep't of Justice, 2015 WL 9272836, at *1 (D.D.C. Dec. 18, 2015).

As to Bagwell's challenge to the adequacy of the search, the Court identified two concerns it had regarding the search performed. First, it was unclear whether or how the Department had searched the U.S. Attorney's Office email system for responsive emails. Id. at *2. Second, even though former Director Freeh had made public remarks indicating that his firm had communicated with the U.S. Attorney's Office regarding the investigation, the Department's

search had not uncovered any such communications or related documents. Id. Because the Department's supporting declarations failed to address these concerns, the Court was left "in substantial doubt as to the sufficiency of the search." Id. Similarly, the Court held that the Department's *Vaughn* index and declarations were not adequately detailed to justify the withholdings it had made. Id. at *4–5. The Court therefore deferred resolution of the cross-motions and directed the Department to "conduct any necessary additional searches, and file a supplemental memorandum in support of its motion for summary judgment, including additional affidavits and a revised *Vaughn* index." Id. at *5.

Following that Order, the Department performed a second search, including one of the U.S. Attorney's Office email system. To conduct that search, the Department identified six staff positions that were most likely to have potentially responsive emails in their email accounts: the U.S. Attorney, the First Assistant U.S. Attorney, the Criminal Chief, the Deputy Criminal Chief, Assistant U.S. Attorney One, and Assistant U.S. Attorney Two. Second Simpson Decl. ¶ 11. It then searched these accounts for emails (and attachments) during the relevant time period containing four search terms: "Pennsylvania State University," "Child sexual abuse and Pennsylvania State University," "Sandusky," and "Freeh." Id. ¶ 12. Upon completion of its search, the Department produced an additional set of documents to Bagwell, while also making further withholdings.

After the second round of productions, the Department renewed its motion for summary judgment, filing supplemental declarations and *Vaughn* indices. See Def.'s Mem. P. & A. Supp. Renewed Mot. Summ. J. ("Def.'s MSJ").[1] Bagwell filed a cross-motion for summary judgment,

---

[1] In the process of preparing this revised *Vaughn* index, the Department discovered approximately 260,800 pages of electronic records that it had neglected to produce. See

3

again challenging the adequacy of the search and the Department's withholdings. See Pl.'s Mem. P. & A. Opp'n Def.'s Mot. Summ. J. & Supp. Pl.'s Cross-Mot. Summ. J. ("Pl.'s MSJ"). The Court held a hearing on the cross-motions on February 28, 2018. Based on the arguments presented in the briefing and at the hearing, the Court will grant in part and deny in part both motions, as detailed below.

## II. Legal Standard

Summary judgment is appropriately granted if the moving party shows that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). FOIA cases "typically and appropriately are decided on motions for summary judgment." Def. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). The Court can award summary judgment to an agency if it "proves that it has fully discharged its obligations under FOIA, after the underlying facts and inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Tushnet v. ICE, 246 F. Supp. 3d 422, 431 (D.D.C. 2017).

The first such obligation an agency must fulfill is to conduct an adequate search for the requested records. See, e.g., Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999). For a search to be adequate, an agency must show "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011) (quotation omitted). In evaluating the adequacy of a search, the Court may rely on sufficiently detailed affidavits or declarations

---

Simpson Decl. ¶ 10. The Court declined to stay the current round of summary judgment briefing until production of the newly-discovered records was complete, instead bifurcating summary judgment to allow this round of briefing to move forward. See Order (July 19, 2017).

submitted by the agency that set forth the search terms and the type of search performed. See Valencia-Lucena, 180 F.3d at 326. Agency FOIA declarations carry "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs. Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation marks omitted).

In addition, an agency must adequately justify any withholdings it makes under FOIA's exemptions from disclosure. Because FOIA "seeks 'to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language,'" NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 136 (1975) (citation omitted), any exemption from disclosure is construed narrowly and the agency bears the burden of establishing that every withholding is justified. See, e.g., DiBacco v. U.S. Army, 795 F.3d 178, 183 (D.C. Cir. 2015).

### III. Analysis

Bagwell levels three main challenges in his renewed motion for summary judgment. First, he once again challenges the adequacy of the Department's searches. Second, he contends that the Department's referral of a set of records to other agencies constitutes an unlawful withholding. And third, he challenges the Department's withholding of documents, primarily pursuant to Exemption 7(A) and Exemption 5.

The Court finds that that the Department's search efforts were inadequate because the search terms used were facially under-inclusive and thereby not reasonably calculated to uncover all responsive materials. As to the referred records, the Court finds that the records referred to the Department of Education constitute improperly withheld records. Finally, the Court finds that the Department has failed to adequately justify the withholding of certain Pennsylvania state

5

grand jury materials under Exemption 7(A) but that it has adequately supported most of its other withholdings.

A. The adequacy of the search

Bagwell claims the Department's search efforts are still inadequate, despite its supplemental searches and declarations. He does not dispute that the Department searched for responsive emails, as the Court requested, nor does he argue that more or different email accounts should have been searched. Rather, Bagwell points to three specific indications of an inadequate search.

First, Bagwell claims that the Department produced only two emails with employees of former Director Freeh's law firm, which he argues is a "positive [indication] of overlooked materials." Pl.'s MSJ at 9–10. He relies on Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999), for this proposition, but that case is inapposite. In Valencia-Lucena, the search was deemed inadequate because the government failed to search "all places it knew likely to turn up the information requested." Id. at 327 (internal quotation marks omitted). By contrast, Bagwell does not identify any additional *places* the Department should have searched, such as other email accounts. Furthermore, based on tallying up the numbers provided in the second declaration from D. Brian Simpson, an Assistant U.S. Attorney for the Middle District of Pennsylvania, the search term "Freeh" turned up over 300 emails across the six accounts searched. See Second Simpson Decl. ¶ 17. Given these results, the Court is satisfied that any responsive email between employees of Freeh's law firm and the U.S. Attorney's Office relating to the investigation would have been uncovered by the search term "Freeh," making it adequate in this regard.

Bagwell next contends the four search terms used to conduct the search were not reasonably selected to capture responsive documents.[2] Pl.'s MSJ at 9. Bagwell argues that the search term "Pennsylvania State University" alone is insufficient because it would not pick up documents that contained only "PSU" or "Penn State," names commonly used to refer to the University. Id. The Court agrees. As Bagwell notes, in common conversation the University is more likely to be referred to as "Penn State" or "PSU," making it reasonable to conclude that emails concerning the various investigations would use one of these two terms rather than the full name of the University. Indeed, in its own pleadings and *Vaughn* Index, the Department itself uses the terms "PSU" and "Penn State," rather than the University's full name. At the hearing, counsel for the Department was unable to provide a sufficient explanation for why the Department used the full name of the University alone as a search term. Because it is likely that emails concerning the investigation would use "PSU" or "Penn State" rather than the full name of the University, the Department's search was not reasonably calculated to find all responsive emails. Cf. Tushnet, 246 F. Supp. 3d at 434–35 (expressing concern over selection of terms that was "facially lacking, with some [searches] not even including terms explicitly called out in [the] request.").

Given the facial under-inclusivity of the term "Pennsylvania Search University," the Court finds that the Department has yet to show "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." Ancient Coin Collectors Guild, 641 F.3d at 514 (quotation marks omitted). The Court will therefore require the Department to

---

[2] As the Court understands it, the search term "Pennsylvania State University" would also have found any documents responsive to the search team "Pennsylvania State University and child sex abuse," since the shorter term is fully contained within the longer term. Thus, the Department, in effect, used three search terms, not four.

conduct a further adequate search of the U.S. Attorney's Office emails. However, before doing so, the Court will order the parties to meet and confer within fourteen days and engage in a good faith effort to arrive at a reasonably limited set of additional search terms that rectify the under-inclusivity of the "Pennsylvania State University" search term without being too over-inclusive.[3] If the parties cannot reach agreement, they shall file a joint submission setting forth their respective terms and their positions on all disputed terms within seven days thereafter. At this juncture, then, the Court will deny without prejudice both motions with respect to the adequacy of the search in order to allow a further search of the six identified email accounts.[4]

B. The referred records

In the course of responding to Bagwell's request, the Department referred a set of records it found in its search to other agencies, such as the Department of Education and the FBI, to review for responsiveness or withholdings. See Joint Status Report (filed May 1, 2017). Bagwell challenges these referrals as improper withholdings under FOIA.

As the D.C. Circuit has recognized, when an agency receives a FOIA request it "cannot simply refuse to act on the ground that the documents originated elsewhere." McGehee v. CIA, 697 F.2d 1095, 1110 (D.C. Cir. 1983). But an agency is permitted to refer documents it finds in its search to the originating agency for processing. See, e.g., id. Such referrals can constitute an

---

[3] If technically feasible, the Department might consider using Boolean search terms to limit the number of unresponsive documents returned. For example, the Department could search for ("PSU" OR "Penn State" OR "Pennsylvania State University") AND (child! OR abuse).

[4] Bagwell's third complaint about the adequacy of the search is that the search terms did not include a reference to Sandusky's charity The Second Mile, in connection with which much of the alleged abuse took place. Because the Court is requiring a further search of the U.S. Attorney's Office emails, it will defer resolution of this point to enable the parties to consider the issue in their discussions concerning additional search terms.

improper withholding under FOIA if the "net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them." Id. This sort of withholding will be improper "unless the agency can offer a reasonable explanation for its procedure." Id.

The parties confirmed at the hearing that all but one of the agencies that received referred records has responded to Bagwell by either producing the documents or asserting exemptions to justify withholdings. Any claim as to these documents is thus moot, since Bagwell has either received his requested records or was in a position to challenge the basis for their withholding. He offers no reason why any response to his request could not come from the referral agency rather than the Department of Justice. In this respect, then, the Court will grant the Department's motion and deny Bagwell's.

That being said, Bagwell has not received a response from the Department of Education regarding the records referred to that agency. The Department of Justice contends that those records are similar to records that were the subject of a separate FOIA request Bagwell made directly to the Department of Education. See Bagwell v. U.S. Dep't of Education, 183 F. Supp. 3d 109 (D.D.C. 2016). That may be so, but any similarity in the two requests does not relieve at least one of the Departments of the obligation to inform Bagwell of its intent to withhold the documents pursuant to valid FOIA exemptions or to release them. Because there is no indication in the record that the Department of Education has ever responded to Bagwell concerning the referred records, those records have been improperly withheld and the Court will grant Bagwell's motion for summary judgment on this point. The Department of Justice will be required to either produce or explain the withholding of those records referred to the Department of Education.

C. Challenges to withheld records

Finally, Bagwell challenges the Department's withholdings of records under Exemption 7(A), which protects certain law-enforcement records, and under Exemption 5, which protects records that fall within a civil litigation privilege.

*1. Withholdings of Pennsylvania Attorney General materials under Exemption 7(A)*

Bagwell first challenges the withholding of a set of documents related to the state grand jury proceedings. The second declaration from Assistant U.S. Attorney Simpson notes that the U.S. Attorney's Office withheld 243,000 pages of electronic grand jury records produced by the Pennsylvania Attorney General's office pursuant to a court order and 1,307 pages of grand jury transcripts (which may or may not be part of the 243,000 pages of records). Second Simpson Decl. ¶¶ 30, 46. In its brief, the Department does not identify any exemptions aside from 7(A) that it is asserting as to these materials.[5]

Exemption 7(A) of FOIA protects from disclosure "records or information compiled for law enforcement purposes" whose release "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). To qualify for the exemption, the enforcement proceedings must be currently ongoing or "reasonably anticipated." Sussman v. U.S. Marshals Service, 494 F.3d 1106, 1114 (D.C. Cir. 2007) (citation omitted).

The D.C. Circuit has recognized that an agency can make the requisite showing under Exemption 7(A) on a categorical, as opposed to document-by-document, basis. See, e.g., Bevis

---

[5] The Department's *Vaughn* index does assert Exemption 7(D) solely as to the 1,307 pages of transcripts. But because the Department did not argue in support of that exemption in its brief, the Court will reserve on its applicability until both parties have an opportunity to brief that issue.

10

v. Dep't of State, 801 F.2d 1386, 1389 (D.C. Cir. 1986). To do so, the agency must meet three requirements. First, it must "define its categories functionally." Id. The "hallmark" of a functional category is that it "allows the court to trace a rational link between the nature of the document and the alleged likely interference." Crooker v. Bureau of Alcohol, Tobacco, & Firearms, 789 F.2d 64, 67 (D.C. Cir. 1986). Second, the agency "must conduct a document-by-document review in order to assign documents to the proper category." Bevis, 801 F.2d at 1389. That is, the agency "must itself review each document to determine the category in which it properly belongs." Id. Finally, the agency "must explain to the court how the release of each category would interfere with enforcement proceedings." Id. at 1390. To make this showing, it is not enough that a record relates to an ongoing proceeding. See, e.g., North v. Walsh, 881 F.2d 1088, 1097 (D.C. Cir. 1989). Nor is it sufficient for an agency to merely state in conclusory terms that disclosure would interfere with a proceeding; rather the agency must specifically articulate *how* disclosure would do so. Sussman, 494 F.3d at 1114; see also United Am. Financial, Inc. v. Potter, 531 F. Supp. 2d 29, 40 (D.D.C. 2008).

Setting aside the first two requirements for categorical withholding, the Department has not met its burden under the third requirement here.[6] In his second declaration, Assistant U.S. Attorney Simpson states that these documents were provided by the Pennsylvania Attorney General's office pursuant to a state court order and that they relate to state grand jury

---

[6] The Court will note that other decisions have dealt with a "grand jury materials" category of documents before, indicating that the Department can create such a functional category of documents. See, e.g., Sussman, 494 F.3d at 1114 (addressing a category defined as "records or information that is relevant to pending grand jury investigations" (citation omitted)). As to the second requirement, the Court will simply remind the Department that Bevis requires that the agency must *itself* review each document to determine its category. See 801 F.2d at 1389.

proceedings. Second Simpson Decl. ¶¶ 30–31, 46–47. He notes that the criminal proceedings related to the Sandusky investigation are still ongoing—Sandusky is seeking a new trial and another defendant has pending post-sentencing motions and an anticipated appeal forthcoming. Id. ¶¶ 32, 47. Thus, Simpson says, the Pennsylvania Attorney General's Office has "a continuing interest in maintaining confidentiality." Id. ¶ 32; see also id. ¶ 47. A letter from the Pennsylvania Attorney General's office confirms the ongoing nature of the Sandusky case and reiterates its "continuing interest in maintaining confidentiality" of these records. Second Simpson Decl. Ex. 2.[7]

The Simpson declaration certainly establishes the ongoing nature of the criminal proceeding. See, e.g., DeMartino v. FBI, 577 F. Supp. 2d 178, 182 (D.D.C. 2008) (holding that a case on appeal is still a pending enforcement proceeding). But it fails to explain *how* the disclosure of any of these documents would interfere with this ongoing proceeding. Prior cases in this circuit have made clear this is insufficient under Exemption 7(A). For instance, in Sussman the D.C. Circuit held that the agency had not met its burden to withhold a category of grand jury materials under Exemption 7(A) where its affidavit "merely" "state[d] that disclosure would reveal the focus of an investigation." 494 F.3d at 1114. Rather, the D.C. Circuit required "specific information about the impact of the disclosures." Id. Similarly, a fellow judge in this District found agency affidavits that provided a "conclusory" assertion that release of the documents could interfere in any future prosecutions without "describing how disclosure of the

---

[7] The Department's brief makes additional assertions of harms that might flow from the release of information, such as intimidating witnesses or jeopardizing new trial strategies. Def.'s MSJ at 4. But these harms are unsubstantiated because none of them appear in the Simpson Declaration that the Department cites to in support of these assertions in its brief.

12

documents could reasonably be expected to interfere with such a prosecution" insufficient to meet the agency's burden under Exemption 7(A). United Am. Financial, 531 F. Supp. 2d at 39.

As in these cases, the Simpson Declaration provides only a conclusory statement that interference would occur without any discussion of *how* it would occur. After all, the mere fact that these records were part of the grand jury proceeding and are confidential does not explain how the release of the records would interfere with the ongoing proceeding. This is particularly so given the post-conviction stage of the Sandusky proceedings and the fact that some material from the grand jury proceeding has now become public knowledge following the completed trials—any claim of a need to protect possible evidence for trial is hollow if that evidence has already been publicly disclosed and admitted at trial, for instance. Without a discussion of the way in which release of this information would jeopardize the still-pending proceedings, the Department has failed to meet its burden under Exemption 7(A).

Accordingly, the Court will require the Department—should it wish to continue to maintain its Exemption 7(A) assertion—to provide more fulsome declarations that adequately support the exemption's applicability. The Court will also remind the Department to take account of the current status of the enforcement proceedings when making any further justification for that exemption. Cf. North, 881 F.2d at 1100 ("Disclosure of the information [plaintiff] seeks cannot interfere with parts of the enforcement proceeding already concluded. On remand, then, the district court should consider whether disclosure can reasonably be expected to interfere . . . with the *remaining* portions of the enforcement proceeding." (emphasis added)). Alternatively, in light of the federalism and comity concerns that would be implicated by ordering the release of records that a state attorney general and court have recognized are

13

protected state grand jury materials, as discussed at the hearing the Court will allow the Department to assert additional bases for withholding if it wishes.

## 2. *Withholdings in the* Vaughn *index under Exemption 5*

Bagwell next raises a challenge to documents withheld and listed in the Department's *Vaughn* index. The government withheld a set of documents in full under Exemption 5—asserting both the attorney work-product privilege and the deliberative process privilege—as well as other documents in part under Exemption 5 and Exemptions 6 and 7(C).[8] Bagwell disputes the applicability of the attorney work-product privilege assertion generally and then separately challenges specific documents withheld in full or in part. The Court will first address his general challenge before moving to his specific document-by-document challenges.

But first, some legal background. Exemption 5 of FOIA protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption encompasses a variety of privileges that apply in the civil discovery context, including, as relevant here, the attorney work-product privilege and the deliberative process privilege. See, e.g., Nat'l Ass'n of Criminal Defense Lawyers v. Dep't of Justice Executive Office for U.S. Attorneys ("NACDL"), 844 F.3d 246, 249 (D.C. Cir. 2016).

The attorney work-product privilege "protects written materials lawyers prepare 'in anticipation of litigation.'" In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998) (citation omitted). This privilege thereby "protect[s] 'the integrity of the adversary trial process itself'" by ensuring attorneys have "'a zone of privacy within which to think, plan, weigh facts and

---

[8] Exemptions 6 and 7(C) protect certain types of documents whose disclosure would constitute an unwarranted invasion of privacy. See 5 U.S.C. § 552(b)(6), (7)(C).

evidence, candidly evaluate a client's case, and prepare legal theories.'" NACDL, 844 F.3d at 251 (citations omitted). A document falls within the scope of this privilege if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Sealed Case, 146 F.3d at 371 (citation omitted). This requires that the attorney "have had a subjective belief that litigation was a real possibility" and that that belief was "objectively reasonable." Id.

The deliberative process privilege, in contrast, is intended to protect the government decision-making process, primarily by "assur[ing] that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). To fall within the scope of this privilege, a document must meet two requirements: (1) it must be "predecisional" and (2) it must be "deliberative." Id. A document is "predecisional" if "it was generated before the adoption of an agency policy" and it is "deliberative" if it "reflects the give-and-take of the consultative process." Id.

      a. Applicability of the attorney work-product privilege

Bagwell first argues that the Department has not justified the applicability of the attorney work-product privilege because it has not met the requirement to show that the withheld documents were prepared in anticipation of litigation. In particular, Bagwell contends that the Department has failed to "identify a 'specific claim' in an enforcement action that caused the document's creation." Pl.'s MSJ at 15. This argument misses the mark.

For one, the D.C. Circuit has rejected the "specific claim" test that Bagwell advances. In NACDL, the D.C. Circuit explained that it has "long held that there is no general, overarching requirement that a governmental document can fall within the work-product privilege only if

prepared in anticipation of litigating a specific claim." 844 F.3d at 253; see also Schiller v. NLRB, 964 F.2d 1205, 1208 (D.C. Cir. 1992) ("Exemption 5 extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated."), abrogated on other grounds by, Milner v. Dep't of Navy, 562 U.S. 562 (2011) (addressing FOIA Exemption 2). While the existence of a specific claim can be helpful "as a means of identifying whether documents had been prepared at a time when litigation was sufficiently in mind," ultimately "there is no need to apply any specific-claim test to conclude that litigation is sufficiently likely to warrant application of the work-product privilege." NACDL, 844 F.3d at 255.

Applying the proper standard, the Department has adequately justified that the documents were prepared in reasonable anticipation of litigation. A declaration submitted by Princina Stone, an attorney with EOUSA, attests that the withheld documents were prepared by the U.S. Attorney's Office while that office "was investigating claims of child sex abuse[] [on] campus." Second Supplemental Stone Decl. ¶ 51. In other words, the documents were created by attorneys during a law enforcement investigation into allegations of specific illegal activity (child sex abuse and concealing such abuse) by specific people (Sandusky and others at the University). The D.C. Circuit has held that "where an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product." SafeCard Servs., 926 F.2d at 1203. Thus, the documents withheld here that were created during the investigation meet the requirement to have been created in reasonable anticipation of litigation.

b. Challenges to documents withheld in full

Bagwell next challenges certain specific documents the Department withheld, either in part or in full. As to the first category, the Department withheld several documents in full, asserting the deliberative process privilege and the attorney work-product privilege. Bagwell contests the withholding of seven of these documents—numbered 1, 2, 3, 6, 11, 12 and 17 in Bagwell's annotated *Vaughn* index. See Pl.'s MSJ Ex. M.

Most of these documents clearly fall within the scope of the attorney work-product privilege. Documents 1, 2, 3, 6, and 12 are described in the *Vaughn* index as emails among government attorneys assigned to the Sandusky investigation that involve discussions of tactics, legal strategies and theories, and investigative techniques. Ms. Stone's declaration similarly attests that these documents are "email communications between the government attorneys, memoranda circulated among [the U.S. Attorney's Office] legal team, [and] attorney typed and hand written notes" all of which "consist[] of the thoughts and impressions of the legal team." Stone Second Decl. ¶ 53. Such documents clearly fall within the scope of the attorney work-product privilege.

Bagwell's challenge to these documents mostly reiterates his earlier argument against the applicability of the work-product privilege altogether: the documents were prepared too early in the investigation and, as such, litigation was not reasonably contemplated. Pl.'s MSJ at 21–24. This argument is no more persuasive here. Because the attorneys prepared these documents during a law enforcement investigation into specific allegations of illegal conduct by specific individuals, with the intention of bringing criminal charges if those allegations were substantiated, they were prepared in reasonable anticipation of litigation.

17

As to the other two documents, the question is a bit closer. One of these, however—Document 11 on Bagwell's annotated *Vaughn* index—falls within the scope of the deliberative process privilege, meaning the Court need not resolve the question of its status under the work-product privilege. This document is described as a variety of unsigned draft letters by the U.S. Attorney's Office. The Stone Declaration clarifies that these email chains included "back and forth pre-decisional communications among the AUSAs and law enforcement personnel." Second Stone Decl. ¶ 57. This confirms that the emails are both predecisional (as drafts) and deliberative, and therefore withholding was proper under the deliberative process privilege.

This leaves Document 17, which is described in the *Vaughn* index as a series of "Grand Jury Subpoenas letters issued to individuals and businesses." Based upon this rather vague description, the Court is unable to determine whether they are covered by the attorney work-product privilege. As such, the Court will order the Department to submit two representative samples of these letters for *in camera* review.[9]

c. Documents withheld in part

Additionally, Bagwell challenges five sets of documents withheld in part. He specifically challenges redactions to these documents made under the deliberative process and work-product privileges. See Pl.'s MSJ at 25–29.

---

[9] The Department has also claimed that Exemption 7(C) protects certain personal information in these letters, such as the names and addresses of recipients or government attorneys. Exemption 7(C) protects documents "compiled for law enforcement purposes" whose release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Under D.C. Circuit precedent, the personal information at issue here would appear to fall within Exemption 7(C). See, e.g., Sussman, 494 F.3d at 1115; SafeCard Servs., 926 F.2d at 1206. However, because Exemption 7(C) only provides a basis for a partial withholding, the Court will still require the Department to submit two sample documents for *in camera* review to determine if any segregability analysis will be needed or if the entire document can be withheld under Exemption 5 or even Exemption 7(C).

The Court concludes that the Department has adequately justified its withholding under the work-product privilege. The descriptions of these documents in the *Vaughn* index state that the Department redacted discussions concerning the legal strategies, theories, and opinions from government attorneys in the ongoing investigation, making these discussions protected by the work-product privilege.[10] Bagwell's counterarguments again reiterate his contention that the documents were not created in reasonable anticipation of litigation. The Court has already explained why that aspect of the work-product privilege has been met. It will therefore sustain the Department's partial withholdings under Exemption 5.

\* \* \*

---

[10] At the hearing, the Court indicated that it was unable to match two of the sets of emails—the third and fifth items challenged by Bagwell—to their entries in the *Vaughn* index. The Department has clarified that those sets of emails are part of the emails regarding newspaper articles, in the entry beginning on page 23 of the *Vaughn* index.

## IV. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part both motions for summary judgment. It will deny both motions without prejudice as to both the adequacy of the search and the Department's withholding under Exemption 7(A), and will require the Department to perform a further adequate search and provide further justification for withholding the Pennsylvania state grand jury materials. The Court will grant the Department summary judgment as to the records referred to agencies other than the Department of Education, but will grant Bagwell summary judgment as to records referred to the Department of Education and will require those records be produced or an explanation for withholding provided. Finally, the Court will grant summary judgment for the Department on its other withholdings under Exemption 5 except for the "subpoenas letters" (which it will review *in camera*).

A separate Order shall accompany this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: March 22, 2018