UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RYAN BAGWELL,

              *Plaintiff*,

v.

U.S. DEPARTMENT OF JUSTICE,

              *Defendant*.

Civil Action No. 15-0531 (CRC)

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

Table of Authorities.................................................................................................. ii

BACKGROUND.................................................................................................... 1

STATEMENT OF MATERIAL FACTS ................................................................ 5

LEGAL STANDARD ........................................................................................... 5

ARGUMENT........................................................................................................ 6

   I.   THE DEPARTMENT PROPERLY INVOKED FOIA EXEMPTIONS 3, 5, 6, 7(C), 7(D).
     .............................................................................................................. 6

     A.   The Department Properly Withheld Information Under Exemption 3 Pursuant to
     Federal Rule of Criminal Procedure 6(e)........................................................ 7

     B.   The Department Appropriately Withheld Confidential Informant Information
     Pursuant to Exemption 5 ............................................................................. 9

     C.   The Department Appropriately Withheld Names and Contact Information of Third
     Parties Pursuant to Exemption 6 and 7(C) ..................................................... 12

        1.   *Exemption 7 Threshold*...................................................................... 13

        2.   *Exemption 7(C)* .............................................................................. 14

     D.   The Department Appropriately Withheld Confidential Informant Information
     Pursuant to Exemption 7(D) ........................................................................ 16

   II.   EOUSA HAS NOT IMPROPERLY WITHHELD REFERRED RECORDS ............. 17

   III.   THE INFORMATION WITHHELD IN THE DEPARTMENT'S RESPONSES
   COULD NOT BE REASONABLY SEGREGATED. ....................................... 18

CONCLUSION.................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*ACLU v. Dep't of Just.*,
   655 F.3d 1 (D.C. Cir. 2011) .............................................................. 14

*Agrama v. IRS*,
   282 F. Supp. 3d 264 (D.D.C. 2017) ................................................. 17

*Am. Immigr. Council v. Dep't of Homeland Sec.*,
   21 F. Supp. 3d 60 (D.D.C. 2014) ..................................................... 11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................... 5

*Bagwell v. U.S. Dep't of Just.*,
   2015 WL 9272836 (D.D.C. Dec. 18, 2015) ................................... 2, 3

*Beck v. Dep't of Just.*,
   997 F.2d 1489 (D.C. Cir. 1993) ................................................. 14, 15

*Blanton v. Dep't of Just.*,
   63 F. Supp. 2d 35 (D.D.C. 1999) ..................................................... 13

*Boyd v. Crim. Div. of U.S. Dep't of Just.*,
   475 F.3d 381 (D.C. Cir. 2007) ......................................................... 18

*Brown v. Dep't of Just.*,
   742 F. Supp. 2d 126 (D.D.C. 2010) ................................................... 6

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................... 5

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ............................................... 9, 10, 11

*Computer Pros. for Soc. Responsibility v. U.S. Secret Serv.*,
   72 F.3d 897 (D.C. Cir. 1996) ........................................................... 13

*CREW v. Dep't of Labor*,
   478 F. Supp. 2d 77 (D.D.C. 2007) ..................................................... 7

*Davis v. Dep't of Just.*,

968 F.2d 1276 (D.C. Cir. 1992) ............................................................................... 13

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001) ..................................................................................... 9, 10

*Dep't of Just. v. Landano*,
508 U.S. 165 (1993) ................................................................................ 15, 16

*Dep't of Just. v. Tax Analysts*,
492 U.S. 136 (1989) ...................................................................................... 6

*Dep't of State v. Wash. Post Co.*,
456 U.S. 595 (1982) ..................................................................................... 12

*FBI v. Abramson*,
456 U.S. 615 (1982) ..................................................................................... 12

*Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*,
656 F.2d 856 (D.C. Cir. 1981) ................................................................... 8, 9

*Gallant v. NLRB*,
26 F.3d 168 (D.C. Cir. 1994) ......................................................................... 7

*Govt. Accountability Project v. Dep't of State*,
699 F. Supp. 2d 97 (D.D.C. 2010) ............................................................... 12

*Hickman v. Taylor*,
329 U.S. 495 (1947) ................................................................................ 11, 12

*Houser v. Church*,
486 F. Supp. 3d 117, 137-138 (D.D.C. 2020) ............................................. 10

*Iglesias v. CIA*,
525 F. Supp. 547 (D.D.C. 1981) .................................................................... 8

*Jordan v. Dep't of Just.*,
591 F.2d 753 (D.C. Cir. 1978) (en banc) .................................................... 11

*Judicial Watch, Inc. v. Dep't of Just.*,
432 F.3d 366 (D.C. Cir. 2005) ..................................................................... 11

*Keys v. Dep't of Just.*,
830 F. 2d 337 (D.C. Cir. 1987) .................................................................... 13

*Lepelletier v. FDIC*,
    164 F.3d 37 (D.C. Cir. 1999) ...................................................................... 12, 14

*Lopez v. Dep't of Just.*,
    393 F.3d 1345 (D.C. Cir. 2005) ...................................................................... 7

*Loving v. Dep't of Defense*,
    550 F.3d 32 (D.C. Cir. 2008) ...................................................................... 9

*Mapother v. Dep't of Just.*,
    3 F.3d 1533 (D.C. Cir. 1993) ...................................................................... 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ...................................................................... 5

*McGehee v. CIA*,
    697 F.2d 1095 (D.C. Cir. 1983) ...................................................................... 17

*Mead Data Cent., Inc. v. Dep't of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ...................................................................... 6, 10, 17

*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ...................................................................... 6, 7

*Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*,
    216 F.3d 1180 (D.C. Cir. 2000) ...................................................................... 6

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ...................................................................... 9

*Pratt v. Webster*,
    673 F.2d 408 (D.C. Cir. 1982) ...................................................................... 13

*Quinon v. FBI*,
    86 F.3d 1222 (D.C. Cir. 1996) ...................................................................... 12

*Rodriguez v. U.S. Dep't of Army*,
    31 F. Supp. 3d 218 (D.D.C. 2014) ...................................................................... 7

*Spirko v. U.S. Postal Serv.*,
    147 F.3d 992 (D.C. Cir. 1998) ...................................................................... 7

*Steinberg v. Dep't of Just.*,
    23 F.3d 548 (D.C. Cir. 1994) ...................................................................... 5

*Summers v. Dep't of Just.*,
  140 F.3d 1077 (D.C. Cir. 1998) ...................................................................... 17

*Tao v. Freeh*,
  27 F.3d 635 (D.C. Cir. 1994) ......................................................................... 5

*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C. Cir. 1997) ................................................................. 10, 11

*Trans-Pac. Policing Agreement v. U.S. Customs Serv.*,
  177 F.3d 1022 (D.C. Cir. 1999) ...................................................................... 7

*U.S. Customs Serv.*,
  802 F.2d 525 (D.C. Cir. 1986) ........................................................................ 6

*United States v. Nobles*,
  422 U.S. 225 (1975) .................................................................................... 11

*Vaughn v. Rosen*,
  484 F.2d 820 (D.C. Cir. 1973) ........................................................................ 6

**Statutes**

5 U.S.C. § 552 ............................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 26 ........................................................................................ 11
Fed. R. Civ. P. 56 ......................................................................................... 5
Fed. R. Crim. P. 16 ....................................................................................... 11
Fed. R. Crim. P. ¶ 15 ................................................................................... 8, 9
Federal Rule of Criminal Procedure 6 ..................................................... 3, 4, 7, 8

Defendant, the Executive Office for United States Attorneys ("EOUSA"), a component of the U.S. Department of Justice (the "Department"), through undersigned counsel, hereby respectfully submits this memorandum of law in support of its renewed motion for summary judgment in the above-captioned matter, arising from a Freedom of Information Act ("FOIA") request submitted by Plaintiff Ryan Bagwell ("Plaintiff" or "Bagwell").

## BACKGROUND

The nature and history of this long-running FOIA litigation is detailed extensively in the Court's December 18, 2015 and March 22, 2018 Memoranda Opinion and Orders, granting in part and denying in part the parties' cross motions (and renewed motions) for summary judgment. *See* ECF Nos. 17, 71. EOUSA provides a brief recitation here.

Plaintiff Ryan Bagwell, an alumnus of Pennsylvania State University ("Penn State") brings this action under FOIA, 5 U.S.C. § 552, and the Privacy Act. On April 30, 2014, Bagwell lodged a FOIA request with EOUSA, requesting "access to any and all records of investigations between November 1, 2011 and [April 30, 2014] that pertain to allegations of child sexual abuse that occurred on the campus of The Pennsylvania State University."[1] Compl. ¶ 5.

EOUSA's FOIA/Privacy Act office, and DOJ's Office of Information Policy provided Bagwell with a final response to his FOIA request on July 8, 2015, several months after Bagwell filed this action. It released 517 pages of records and withheld 104 pages in full. *See* Def's Mot. Summ. J., ECF No. 12-2 at 2-3. EOUSA also withheld over 2,700 pages of records and 86 gigabytes of electronic information that was categorically labeled "grand jury information" or

---

[1]     As the Court has previously noted, both the U.S. Attorney's Office for the Middle District of Pennsylvania and the Pennsylvania Attorney General's Office oversaw criminal investigations into allegations of child sexual abuse by former Penn State assistant football coach Jerry Sandusky. In addition, former FBI Director Louis Freeh and his law firm were retained by Penn State's Board of Trustees to conduct an internal investigation into the Sandusky matter. Mar. 22, 2018 Mem. Op. at 2, ECF No. 71.

"grand jury material." *Id*. Following EOUSA's final response, the parties filed cross-motions for summary judgment, with Bagwell challenging the adequacy of the Department's search and its withholding of documents. In denying the parties' motions, the Court concluded that the Department had not provided enough information to allow for resolution of the motions at that juncture. *Bagwell v. U.S. Dep't of Just.*, Civ. A. No. 15-0531 (CRC) 2015 WL 9272836, at *1 (D.D.C. Dec. 18, 2015). Specifically, the Court held that EOUSA did not meet its burden regarding the adequacy of its search, and in particular, noted it was unclear whether or how the Department had searched the U.S. Attorney's Office for the Middle District of Pennsylvania (the "Middle District") email system for responsive emails. *Id*. The Court also concluded that the Department's declarations and *Vaughn* did not adequately describe its justifications for the Department's withholdings. *Id*. The Court therefore deferred resolution of the cross-motions and directed the Department to "conduct any necessary additional searches, and file a supplemental memorandum in support of its motion for summary judgment, including additional affidavits and a revised Vaughn index." *Id*. at *5.

EOUSA subsequently conducted a supplemental search, including of a Middle District email system, and produced additional documents to Bagwell. EOUSA then filed a renewed motion for summary judgment. *See* ECF Nos. 54, 57. However, in the process of preparing its revised *Vaughn*, EOUSA discovered approximately 260,800 pages of electronic records that had not been produced (hereinafter referred to as the "inadvertently overlooked records"). *See id*. The Court declined to stay briefing until after production of the inadvertently overlooked records, and instead bifurcated the briefing. *See* July 19, 2017 Order, ECF No. 50. In response, Bagwell filed a cross motion again challenging the search and adequacy of the withholdings. *See* ECF No. 61.

On March 22, 2018, the Court issued its Memorandum Opinion and Order granting in part

and denying in part the parties' cross motions. ECF No. 71. In so holding, the Court found that EOUSA's search was not adequate because the search terms were "facially underinclusive and not reasonably calculated to uncover all responsive records." *Id*. at 5. Further, the Court ruled in EOUSA's favor with respect to documents referred to agencies other than the Department of Education. *Id*. at 20. By contrast, the Court ruled in Bagwell's favor regarding documents referred to the Department of Education, and "require[d] those records be produced or an explanation for withholding provided." *Id*.  Finally, the Court also held that EOUSA failed to adequately justify its withholdings of certain Pennsylvania state grand jury materials under Exemption 7(A).  *Id*.

Following the Court's opinion, the parties conferred and EOUSA and the Middle District agreed to conduct additional email searches (hereinafter referred to as the "remand records"), identifying certain custodians to be searched and search terms to be used. *See* April 23, 2018 Joint Status Report, ECF No. 74 at 1-2. EOUSA also proposed a rolling production schedule for the inadvertently overlooked records. *Id*.

Regarding the inadvertently overlooked records, EOUSA completed its production on December 4, 2019. *See* Dec. 5, 2019 Joint Status Report, ECF No. 95; Jan. 21, 2020 Joint Status Report, ECF No. 98. The inadvertently overlooked records constituted 11,648 pages. EOUSA withheld the records in full, citing FOIA Exemption 3 (pursuant to Federal Rule of Criminal Procedure ("Criminal Rule") 6(e)), 6, 7(C), and 7(D).

Following several discussions between the parties on narrowing the total scope of the remand records and to eliminate nonresponsive documents and large attachments, EOUSA finished its production of the remand records on October 21, 2020. *See* Nov. 24, 2020 Joint Status Report, ECF No. 105.  By that response, EOUSA released 45 pages in full, 153 pages in part, withheld 253 pages in full, and deemed 170 pages as duplicates. Per the parties' previous

agreement, the Department agreed to allow Plaintiff to request that Defendant process up to ten email attachments. On November 8, 2020, Plaintiff provided the Department with a list of five email attachments for processing. The Department provided these pages to Plaintiff on December 31, 2020. Nov. 24, 2020 Joint Status Report, ECF No. 105.

After EOUSA's completion of the remand records, the parties conferred and agreed to move forward with Plaintiff's challenges to the Department's withholdings. Specifically, Plaintiff challenges withholdings pursuant to FOIA Exemption 3 and Federal Rule of Criminal Procedure 6(e) of the inadvertently overlooked records. Plaintiff also challenges the Department's withholdings of the remand records, including records referred to other agencies. *See* Feb. 1, 2021 Joint Status Report, ECF No. 107.[2] Because Plaintiff seeks to challenge EOUSA's referral of records to the Department of Education and the FBI, EOUSA provided a supplemental response on April 12, 2021 including the referred pages and the total withhold in full and duplicate pages from both the referred records and the original October response combined. Hudgins Decl. ¶ 10. That letter indicated EOUSA released 1 page in full, 14 pages in part, withheld 259 pages in full, and 174 pages were duplicates. *Id*.[3]

Accordingly, EOUSA now moves for summary judgment. There exists no genuine dispute of material fact regarding EOUSA's Exemption 3 withholdings of the inadvertently overlooked

---

[2]    At this time, Plaintiff does not challenge the Department's supplemental searches or other withholdings, but has indicated "that limiting the briefing to these issues will not waive Plaintiff's right to challenge the propriety of any other claimed exemptions regarding the inadvertently overlooked records should the Court eventually order their release." *See* ECF No. 107. Accordingly, Defendant addresses only the withholdings identified by the parties in the February 1, 2021 Joint Status Report, but reserves its right to seek summary judgment in the future on the other applicable withholdings, or the adequacy of the Department's supplemental searches.

[3]    A copy of the response letters for the inadvertently overlooked records, remand search records, and referral records are attached hereto.

records as the records would reveal confidential grand jury information protected by Criminal Rule 6(e). Further, regarding the remand records, there is no dispute that EOUSA appropriately withheld these records under Exemptions 5, 6, 7(C), and 7(D). Accordingly, judgment in EOUSA's favor is warranted.

## STATEMENT OF MATERIAL FACTS

The Department incorporates as though fully set forth herein the attached Statement of Undisputed Material Facts ("SUMF"). In support of that Statement and the Department's Motion for Summary Judgment, the Department submits the Declaration of Natasha Hudgins, attorney-advisor for EOUSA, attached hereto as Exhibit 1 ("Hudgins Decl.").

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248. Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must instead establish more than "the mere existence of a scintilla of evidence" in support of its position. *Anderson*, 477 U.S. at 252. Thus, summary judgment is due if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]." *Id.* In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *See Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

To obtain summary judgment in a FOIA action, an agency must show, viewing the facts in a light most favorable to the requester, that there is no genuine issue of material fact as to the agency's compliance with FOIA. *Steinberg v. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994). The Court may enter summary judgment based solely upon information provided in affidavits or declarations when those affidavits or declarations describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exception, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). A plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents." *Brown v. Dep't of Just.*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010).

## ARGUMENT

## I.  THE DEPARTMENT PROPERLY INVOKED FOIA EXEMPTIONS 3, 5, 6, 7(C), and 7(D).

FOIA requires that an agency release responsive information unless it is protected from disclosure by one or more of the FOIA's nine exemptions. *See* 5 U.S.C. § 552(b); *see also Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). The agency bears the burden of demonstrating that any withheld information falls into one or more of those exemptions. 5 U.S.C. § 552(a)(4)(B); *see also Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000). An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index that "permit[s] adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treas. Esps Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C.

Cir. 1977); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973).

Additionally, although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project*, 656 F.2d at 738); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice.") (citing *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

Finally, FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this section." 5 U.S.C. § 552(b). The D.C. Circuit has held that district courts have an affirmative obligation to consider this issue and make segregability findings. *See Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

### A. The Department Properly Withheld Information Under Exemption 3 Pursuant to Criminal Rule 6(e)

FOIA Exemption 3 incorporates various nondisclosure provisions that are contained in other federal statutes. *See* 5 U.S.C. § 552(b)(3). For a statute to support withholding information under this exemption, the statute either "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." *Rodriguez v. U.S. Dep't of Army*, 31 F. Supp. 3d 218, 236 (D.D.C. 2014).

Criminal Rule 6(e) regulates disclosure of matters occurring before a grand jury.  For a procedural rule to qualify as "a statute" within the meaning of Exemption 3, it must have been affirmatively enacted into law by Congress.  The D.C. Circuit "recognized long ago that requests for documents related to grand jury investigations implicate FOIA's third exemption, because  [Criminal Rule 6(e)] prohibits government attorneys and others from disclosing a matter occurring before the grand jury."  *Lopez v. Dep't of Just.*, 393 F.3d 1345, 1349 (D.C. Cir. 2005).

In particular, Criminal Rule 6(e) "embodies a broad sweeping policy of preserving the secrecy of grand jury material regardless of the substance in which such material is contained." *Iglesias v. CIA*, 525 F. Supp. 547, 556 (D.D.C. 1981).  The broad reach of Criminal Rule 6(e) protects not only documents and other hard evidence presented to the grand jury, but also such information as witness identities and the substance of testimony:

> The scope of the secrecy is necessarily broad.  [Rule 6(e)] encompasses not only the direct revelation of grand jury transcripts but also the disclosure of information which would reveal the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like.

*Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 869 (D.C. Cir. 1981) (quotations omitted).

EOUSA applied FOIA Exemption 3, in conjunction with Criminal Rule 6(e), to withhold the inadvertently overlooked records in full as they would reveal grand jury strategy.  Hudgins Decl. ¶¶ 12, 15.  Here, the inadvertently overlooked records constituted 11,648 pages of potentially responsive records, that resulted from the parties' agreement to narrow the subset of emails to those specifically mentioning the names of ten third party individuals. Hudgins Decl. ¶¶ 7, 16. The release of the nature and scope of the emails obtained by grand jury subpoena from Pennsylvania State University is likely to pierce the veil of secrecy over the direction of the grand jury investigation.  *Id*. ¶ 16. The emails sought are specific to those records that mention third parties

and what the federal grand jury investigators were seeking to learn through the process of investigation relating to those persons. *Id.* Further, release of the emails could reveal other persons and staff of interest to the investigation that were not made public during the federal or state investigations. *Id.*

Given the public nature of the Jerry Sandusky and the Penn State scandal, there is a lot of information that was released to the public regarding the details and findings of both the federal and state investigations. *Id.* However, the emails have not been publicly released.[4] *Id.* This information, combined with the release of emails relating to specific individuals, could be used to readily determine or identify other faculty or staff that may have been subject to investigation. *Id.* Withholding this information also shields those individuals as they were ultimately not prosecuted by the federal government. *Id.*

Release of information contained in this record would publicly reveal the scope and secret aspects of the grand jury investigation by revealing grand jury strategy. *See Fund for Constitutional Gov't*, 656 F.2d at 869. Accordingly, EOUSA properly asserted Exemption 3.

## B.   The Department Appropriately Withheld Deliberative and Privileged Information Pursuant to Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields documents that would be privileged in the context of civil discovery, including materials protected by the deliberative process privilege, the attorney-client

---

[4]     Prior to the parties' agreement to narrow the scope of the inadvertently overlooked records as described above, EOUSA made five releases of inadvertently overlooked records. In these earlier releases, EOUSA released to Plaintiff some records that the agency deemed were not inextricably intertwined with information that would reveal the inner workings of the grand jury process in the broader pool of records. Following the parties' agreement to narrow, EOUSA determined that no portions of the inadvertently overlooked records could be segregated. Hudgins Decl. ¶ 17.

privilege, and the attorney work product doctrine.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

> 1.    *The Deliberative Process Privilege*

"The deliberative process privilege protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).  The privilege applies to records that are both "predecisional" and "deliberative."  *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  As used in the context of the privilege, "predecisional" material is that "generated before the adoption of agency policy."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  Material is "deliberative" if it "reflects the give-and-take of the consultative process."  *Id.*  The privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  *Id.*

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news," and the privilege's "object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government."  *Klamath Water*, 532 U.S. at 8-9 (citations omitted); *see also Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) ("[T]he deliberative process privilege . . . reflect[s] the legislative judgment that 'the quality of administrative decisionmaking would be seriously undermined if agencies were forced to operate in a fishbowl because the full and frank exchange of ideas on legal or policy matters would be impossible.'") (quoting *Mead Data Cent* (internal quotation marks omitted)).

In this case, EOUSA invoked Exemption 5 to portions of the remand records based upon the deliberative process for certain intra-agency communications between federal prosecutors in the Middle District and the Department of Education, the Federal Bureau of Investigation ("FBI"), U.S. Postal Inspection Service, or the Criminal Division of the Department of Justice.  Hudgins Decl. ¶ 35. The intra-agency discussions regard the developments of investigators and prosecutors, and discuss the potential investigation strategy options the agencies should take to move the investigation forward. *Id*. The communications included the agencies' legal impressions as the investigation continued to unfold. *Id*. Because release of this information would compromise the deliberative process, the information was properly withheld. *See e.g.*, *Houser v. Church*, 486 F. Supp. 3d 117, 137-138 (D.D.C. 2020).

### 2.      The Attorney Work Product Privilege

The attorney work product privilege applies to materials prepared in anticipation of litigation.  *See Tax Analysts*, 117 F. 3d at 620.  The privilege is "relatively broad and encompasses documents prepared for litigation that is 'foreseeable,' if not necessarily imminent."  *Am. Immigr. Council v. Dep't of Homeland Sec.*, 21 F. Supp. 3d 60, 78 (D.D.C. 2014).  Courts have recognized that this privilege may shield the entire document prepared in anticipation of litigation, not just the portions containing opinions and legal theories.  *Tax Analysts I*, 117 F.3d at 620.  Thus, agencies do not have an obligation to segregate and release factual material when withholding information under Exemption 5 based on the attorney work product doctrine.  *Judicial Watch, Inc. v. Dep't of Just.*, 432 F.3d 366, 372 (D.C. Cir. 2005) (holding that "because the emails at issue in the case are attorney work product, the entire contents of the documents—*i.e.*, facts, law, opinions, and analysis—are exempt from disclosure under FOIA").

The attorney work-product privilege applies in both civil and criminal cases. *See United States v. Nobles*, 422 U.S. 225, 236–38 (1975); Fed. R. Civ. P. 26(b)(3); Fed. R. Crim. P. 16(a)(2), 16(b)(2)(A). The privilege aims primarily to protect "the integrity of the adversary trial process itself." *Jordan v. Dep't of Just.*, 591 F.2d 753, 775 (D.C. Cir. 1978) (en banc). It does so by "provid[ing] a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862, 864 (D.C. Cir. 1980). Without the privilege, "much of what is now put down in writing would remain unwritten" because "[a]n attorney's thoughts, heretofore inviolate, would not be his own." *Hickman v. Taylor*, 329 U.S. 495, 510–12 (1947). Protecting attorney work product from disclosure prevents attorneys from litigating "on wits borrowed from the adversary." *Id*. at 516 (Jackson, J., concurring).

As explained in EOUSA's declaration and *Vaughn* index, EOUSA properly withheld documents applying the attorney work product privilege to portions of the remand records. Hudgins Decl. ¶ 34. EOUSA withheld internal Middle District emails that discussed whether prosecutors should subpoena records from certain third-party individuals. *Id*. These emails contained litigation strategy regarding the prosecution of individuals related to the Penn State-Sandusky matter. *Id*. Accordingly, the Department is entitled to judgment as a matter of law regarding its Exemption 5 withholdings.

## C. The Department Appropriately Withheld Names and Contact Information of Third Parties Pursuant to Exemption 6 and 7(C)

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" is broadly construed and includes "[g]overnment records on an individual which can be identified as applying to that individual."

*Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."); *Gov't. Accountability Project v. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010).

### 1.    *Exemption 7 Threshold*

FOIA Exemption 7 protects from mandatory disclosure "records or information compiled for law enforcement purposes," to the extent that disclosure could result in one of the six harms enumerated in subparts (A) through (F) of the exemption. *See* 5 U.S.C. § 552(b)(7). As such, judicial review of an agency's withholding under FOIA Exemption (b)(7) "requires a two-part inquiry." *FBI v. Abramson*, 456 U.S. 615, 622 (1982). First, the relevant information must have been "compiled for law enforcement purposes." *Abramson*, 456 U.S. at 622; *see Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996). A record is compiled for law enforcement purposes if: (1) the activity that gives rise to the documents is related to the enforcement of federal laws or the maintenance of national security; and (2) the nexus between the activity and one of the agency's law enforcement duties is based on information sufficient to support at least a "colorable claim" of its rationality. *See Keys v. Dep't of Just.*, 830 F. 2d 337, 340 (D.C. Cir. 1987); *Pratt v. Webster*, 673 F.2d 408, 420–21 (D.C. Cir. 1982); *Blanton v. Dep't of Just.*, 63 F. Supp. 2d 35, 44 (D.D.C. 1999).

Courts assume that a "criminal law enforcement agency[s']" records were for law enforcement purposes because government agencies "typically go about their intended business," and courts apply a "more deferential attitude toward [their] claims of 'law enforcement purpose.'" *Pratt*, 673 F.2d at 418–19. In light of that deference, the D.C. Circuit has opined that a law-enforcement agency need only show that the nexus between the activity in question and its law-

enforcement duties "must be based on information sufficient to support at least 'a colorable claim' of its rationality." *Keys*, 830 F.2d at 340 (quoting *Pratt*, 673 F.2d at 421).

### 2.    Exemption 7(C)

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  The names of law enforcement officers who work on criminal investigations have traditionally been protected against release by Exemption 7(C).  *Davis v. Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992).  Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity.  *Computer Pros. for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996).

In assessing the applicability of Exemptions 6 and 7(C), courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *ACLU v. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011) (noting the balance of privacy and public interests when assessing applicability of Exemption 7(C)).  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *FLRA*, 510 U.S. at 497)  (alterations in original); *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)).  "Information that 'reveals little or nothing about an agency's

own conduct' does not further the statutory purpose." *Beck*, 997 F.2d at 1492.

EOUSA withheld certain information of the inadvertently overlooked and remand records pursuant to FOIA Exemptions 6 and 7(C).  Hudgins Decl. ¶¶ 24, 29.  EOUSA determined that, as an initial matter, the threshold for Exemption 6 was satisfied because the information withheld applies to particular people. *Id*. ¶ 26.  EOUSA also determined that the threshold for Exemption 7(C) was satisfied because records in question were created for the purpose of handling the potential criminal prosecution of Jerry Sandusky and other Penn State officials. *Id*. ¶ 26.

EOUSA asserted Exemptions 6 and 7(C) to protect the names and identifying information relating to third parties in both the inadvertently overlooked and remand search records.  Hudgins Decl. ¶ 27. For example, EOUSA withheld the names, contact information and personal identifying information of third-party students and faculty. Hudgins Decl. ¶ 28. The release of names or identifying information related to third parties not publicly acknowledged by law enforcement could damage the individuals' reputation by virtue of being associated with any law enforcement investigation. *Id*. EOUSA determined that all of these individuals have cognizable privacy interests in this information because, the disclosure of information contained in the records could subject individuals to an unwarranted invasion of their personal privacy by leading efforts to contact them directly, gain access to their personal information, or subject them to harassment or harm.  *Id*. ¶ 27. Similarly, in the remand search records, EOUSA also withheld the identities of third parties providing tips or other information to government prosecutors through the Middle District public contact email address. *Id*. ¶ 29. These individuals appeared to be third parties without any association with Penn State. *Id*.

This information would provide little or no information regarding the government's performance of its duties.  Hudgins Decl. ¶ 30. Thus, no public interest would counterbalance the

individuals' privacy right in the information withheld under this exemption. *Id*.

> **D.      The Department Appropriately Withheld Confidential Informant
> Information Pursuant to Exemption 7(D)**

Exemption 7(D) exempts from disclosure materials compiled for law enforcement
purposes where such disclosure:

> Could reasonably be expected to disclose the identity of a confidential source,
> including a State, local, or foreign agency or authority or any private institution
> which furnished information on a confidential basis, and, in the case of a record or
> information compiled by criminal law enforcement authority in the course of a
> criminal investigation or by an agency conducting a lawful national security
> intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  In this context, "confidential" refers "to a degree of confidentiality less
than total secrecy." *Dep't of Just. v. Landano*, 508 U.S. 165, 174 (1993).  Rather, a source "should
be deemed confidential if the source furnished information with the understanding that the
[agency] would not divulge the communication except to the extent the [agency] thought necessary
for law enforcement purposes." *Id*.

In this case, EOUSA applied Exemption 7(D) to the inadvertently overlooked records.
Hudgins Decl. ¶21. These documents were compiled by federal agencies for law enforcement
purposes, in this instance, to assist federal investigators in their investigation. *Id*. During the
processing of Bagwell's FOIA request, EOUSA learned that Penn State provided information
pertaining to many individuals and the institution at large to federal investigators solely under the
presumed confidentiality of the grand jury investigation. *Id*.

Regarding the remand records, EOUSA applied Exemption 7(D) to documents and
information provided by third parties, often through counsel. *Id*. ¶ 22. EOUSA withheld references
to confidentially provided records as well as the passwords to encrypted records provided to
federal prosecutors. *Id*. For example, EOUSA withheld portions of documents reflecting

information provided to federal investigators from potential subjects, or their attorneys on a confidential basis. In most instances, EOUSA was able to segregate the document to release in part. *Id*.

## II.   EOUSA HAS NOT IMPROPERLY WITHHELD REFERRED RECORDS

Lastly, Bagwell also challenges EOUSA's referrals to other agencies. *See* ECF No. 107. In this case, EOUSA referred documents to the Department of Education and the FBI.[5]

As the D.C. Circuit has recognized, when an agency receives a FOIA request it "cannot simply refuse to act on the ground that the documents originated elsewhere." *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983). But an agency is permitted to refer documents it finds in its search to the originating agency for processing. *See, e.g., id*. Such referrals can constitute an improper withholding under FOIA if the "net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them." *Id*. This sort of withholding will be improper "unless the agency can offer a reasonable explanation for its procedure." *Id*.

In this case, referrals were made from the remand search records. Hudgins Decl. ¶ 38. For the Department of Education, EOUSA referred emails and documents created by the Department of Education relating to Penn State. *Id*. Similarly, there were documents EOUSA determined contained FBI equities, and appropriately referred those documents. *Id*. ¶ 40.

Because neither the Department of Education nor the FBI appear to have responded to EOUSA's referrals, on April 12, 2021, EOUSA made a supplemental production to Plaintiff. Hudgins Decl. ¶¶ 41, 42. EOUSA released 1 page in full, released 9 pages in part, withheld 3 pages

---

[5]      This Court previously held that the Department "improperly withheld" referred documents relating to the Department of Education. *See* Mar. 22, 2018 Mem. Op. 9, ECF No. 70.

17

in full, and 4 pages were deemed duplicates. The April 12, 2021 response letter was dated October 20, 2020 by administrative error. *Id*.

## III.   THE INFORMATION WITHHELD IN THE DEPARTMENT'S RESPONSES COULD NOT BE REASONABLY SEGREGATED.

While an agency may properly withhold records or parts of records under one or more FOIA exemptions, it "must release 'any reasonably segregable portions' of responsive records that do not contain exempt information.'" *Agrama v. IRS*, 282 F. Supp. 3d 264, 275 (D.D.C. 2017); *see* 5 U.S.C. § 552(b) (requiring "any reasonably segregable portion of a record shall be provided to [the requester] after deletion of the portions which are exempt"). Non-exempt portions of a document "must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data*, 566 F.2d at 260. Before approving the application of a FOIA exemption, district courts must make specific findings of segregability regarding the documents to be withheld. *Summers v. Dep't of Just.*, 140 F.3d 1077, 1081 (D.C. Cir. 1998). Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material. *Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007).

As explained in the attached declaration of Natasha Hudgins, EOUSA evaluated whether any information contained in either the inadvertently overlooked records and remand records could be segregated. Hudgins Decl. ¶ 43-45. In responding to Bagwell's FOIA request, EOUSA staff members reviewed each release of records line by line in order to confirm that any segregable, non-exempt information was released. *See* Hudgins Decl. ¶ 44. As a result of this review, EOUSA provided Bagwell with all non-exempt responsive information. *Id*. ¶ 45.

## CONCLUSION

For the foregoing reasons, Defendant respectfully request that the Court grant Defendant's Motion for Summary Judgment with respect to each of Plaintiff's claims.

April 12, 2021

Respectfully submitted,

CHANNING D. PHILIPS,  D.C. Bar No. 415793
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By:  */s/ Brenda González Horowitz*
BRENDA GONZÁLEZ HOROWITZ
D.C. Bar No. 1017243
Assistant United States Attorney
U.S. Attorney's Office, Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2512
Brenda.Gonzalez.Horowitz@usdoj.gov

*Attorneys for the United States of America*