UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RYAN BAGWELL,<br><br>            *Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>            *Defendant*. | Civil Action No. 15-0531 (CRC) |

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56(b) and Local Civil Rule 7(h), Defendant the Executive Office of United States Attorneys ("EOUSA"), a component of the United States Department of Justice (the "Department"), respectfully submits this statement of undisputed material facts.[1] The enclosed declaration of Natasha Hudgins and accompanying attachments support the following statement:

**BACKGROUND[2]**

1.    On April 30, 2014, Plaintiff Ryan Bagwell ("Plaintiff" or "Bagwell") submitted a Freedom of Information ("FOIA") request with EOUSA, requesting "access to any and all records of investigations between November 1, 2011 and [April 30, 2014] that pertain to allegations of child sexual abuse that occurred on the campus of The Pennsylvania State University."[3] Compl. ¶

---

[1]    Defendant incorporates by reference EOUSA's Statement of Undisputed Facts filed in support of its motion for summary judgment, ECF No. 12-2 and its renewed motion, ECF Nos. 54, 57.

[2]    Given the long and tangled history of this litigation, Defendant recounts only the relevant details as it pertains to this motion.

[3]    As the Court has previously noted, both the U.S. Attorney's Office for the Middle District of Pennsylvania (the "U.S. Attorney's Office") and the Pennsylvania Attorney General's Office

5.

2. Receiving no response from EOUSA, Plaintiff initiated this lawsuit on April 8, 2015. *See* ECF No. 1.

3. On or about December 2014, EOUSA directed the U.S. Attorney's Office for the Middle District of Pennsylvania ("USAO-MDPA") FOIA/PA staff to search for records responsive to Plaintiff's FOIA/PA request. Declaration of Princina Stone ("Stone Decl.") ¶ 7), ECF No. 12-4.

4. EOUSA's FOIA/Privacy Act office, and DOJ's Office of Information Policy ("OIP") provided Bagwell with a final response to his FOIA request on July 8, 2015, several months after Bagwell filed this action. It released 517 pages of records and withheld 104 pages in full. *See* Def's Mot. Summ. J., ECF No. 12-2 at 2-3.

5. EOUSA also withheld over 2,700 pages of records and 86 gigabytes of electronic information that was categorically labeled "grand jury information" or "grand jury material." *Id*.

6. Following EOUSA's final response, the parties filed cross-motions for summary judgment, with Bagwell challenging the adequacy of the Department's search and its withholding of documents. *See* ECF Nos. 12, 13.

7. During the initial briefing process in this matter, the USAO-MDPA realized that there were additional records that were overlooked during the original searches regarding Plaintiff's requests. Defendant made the Court aware of the error, and on June 16, 2017, Defendant provided the declaration of AUSA Brian Simpson from the USAO-MDPA to explain how the

---

oversaw criminal investigations into allegations of child sexual abuse by former Penn State assistant football coach Jerry Sandusky. In addition, former FBI Director Louis Freeh and his law firm were retained by Penn State's Board of Trustees to conduct an internal investigation into the Sandusky matter. *See* Mar. 22, 2018 Mem. Op. at 2, ECF No. 71.

records were inadvertently overlooked. Hudgins Decl. ¶5.

8. Simpson's declaration outlined for the Court the details regarding inadvertently overlooked records that were potentially responsive to Plaintiff's request and explained that the records were obtained by federal grand jury subpoena(s). Declaration of Natasha Hudgins ("Hudgins Decl.") ¶5; ECF No. 46.

9. EOUSA began processing the records accordingly. After the continuous processing of records, on June 13, 2019 the parties appeared before the Court, which ordered the parties to meet and confer to further narrow the pool of potentially responsive records located within the inadvertently overlooked records. Hudgins Decl. ¶ 6.

10. Out of those negotiations, the parties ultimately agreed to narrow the remaining pool of inadvertently overlooked records for review to emails that contained the names of ten individuals over a 15-month period. That agreement narrowed the remaining pages of potentially responsive records to 11,648 pages. Hudgins Decl. ¶ 7.

11. On December 4, 2019, EOUSA provided a response to Plaintiff withholding 11,648 pages of records pursuant to (b)(3), (b)(6), (b)(7)(C). By letter dated April 12, 2021, EOUSA provided a supplemental response letter correcting the response to add (b)(7)(D) to the exemptions claimed. Hudgins Decl. ¶ 8.

12. Immediately following the processing of the inadvertently overlooked records, EOUSA proceeded to assess the remanded search records to begin production. The remanded records consisted of approximately 540,620 pages of potentially responsive records. Hudgins Decl. ¶ 9.

13. On February 19, 2020, the parties attended a telephonic status hearing before this Court. Per the minute order dated February 19, 2020, the parties met and conferred to narrow the

number of remand records that would be processed. Hudgins Decl. ¶ 9.

14. In March 2020, Plaintiff accepted Defendant's proposed terms, and the parties narrowed the scope of the remand records to approximately 4,982 pages of emails without attachments. Hudgins Decl. ¶ 9.

15. Defendants further agreed to process the email attachments for up to 10 emails should plaintiff request it. Hudgins Decl. ¶ 9; *see also* ECF Nos. 99, 100.

16. On October 21, 2020, Defendant completed it's processing of the agreed upon remand records and provided a response to Plaintiff. Hudgins Decl. ¶ 10.

17. By that response, EOUSA released 45 pages in full, 153 pages in part, withheld 253 pages in full, and deemed 170 pages as duplicates. *Id*.

18. The October 2020 letter included the release in full and release in part page numbers. EOUSA intended to supplement the October 2020 letter. Hudgins Decl. ¶ 10.

19. Because Plaintiff challenges the referral of records in the October response, EOUSA provided a supplemental response on April 12, 2021 including the referred pages and the total withheld in full and duplicate pages from both the referred records and the original October 2020 response combined. That letter indicated EOUSA released 1 page in full, 14 pages in part, withheld 259 pages in full, and 174 pages were duplicates. Hudgins Decl. ¶ 10; Decl. Exhibit A.

## EXEMPTION 3

20. FOIA Exemption 3 exempts from disclosure information which is: specifically exempted from disclosure by statute… provided such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3).

21. In this instance, EOUSA withheld records that were protected from disclosure by Federal Rule of Criminal Procedure ("Rule") 6e. Hudgins Decl. ¶ 11.

22. Rule 6(e) confers broad protections on grand jury information in order to protect their secrecy. That secrecy is essential to the functioning of a grand jury because it encourages witnesses to testify, limits the ability of suspects and defendants to impede the work of the grand jury and the investigators, protects members of the grand jury, and shields individuals who are accused of criminal activities but ultimately exonerated prior to being charged. Hudgins Decl. ¶ 12.

23. Federal Rule of Criminal Procedure 6(e)(2)(B) leaves no discretion about the decision to withhold information from the public. Government attorneys and other individuals specified by statute are prohibited from disclosing information related to matters occurring before the grand jury. Thus, EOUSA had no discretion in the release of the records relating to the grand jury proceedings. Hudgins Decl. ¶ 13.

24. In this instance, EOUSA withheld the inadvertently overlooked emails in full, as they would reveal the strategy and direction of the federal grand jury investigation. Hudgins Decl. ¶ 14.

25. The records obtained by grand jury subpoena of potentially responsive records to review were significantly narrowed to a subset of emails specifically mentioning the names of 10 third party individuals. The release of the nature and scope of the emails obtained by grand jury subpoena from Pennsylvania State University is likely to pierce the veil of secrecy over the direction of the grand jury investigation. Hudgins Decl. ¶ 15.

26. The emails sought are specific to those records that mention specific third parties and what the federal grand jury investigators were seeking to learn through the process of

5

investigation relating to those persons. Further, the emails could reveal other persons and staff of interest to the investigation that were not made public during the federal or state investigations. Hudgins Decl. ¶ 15.

27. Given the public nature of the Jerry Sandusky and PSU scandal, there is a lot of information that was released to the public regarding the details and findings of both the federal and state investigations. This information combined with the release of emails relating to specific individuals could be used to determine other faculty or staff that may have been subject to investigation. Withholding this information also shields those individuals as they were ultimately not prosecuted by the federal government. Hudgins Decl. ¶ 15.

28. Prior to the parties' agreement to narrow the scope of the inadvertently overlooked records as described in Paragraphs 10 and 15 above, EOUSA made 5 releases of inadvertently overlooked records. Hudgins Decl. ¶ 16.

29. In these earlier releases, EOUSA released to Plaintiff some records that the agency deemed were not inextricably intertwined with information that would reveal the inner workings of the grand jury process in the broader pool of records. Hudgins Decl. ¶ 16.

30. Following the parties' agreement to narrow, EOUSA determined that no portions of the inadvertently overlooked records could be segregated. Hudgins Decl. ¶ 16.

**EXEMPTION 5**

31. Exemption 5 protects inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested. 5 U.S.C. § 552(b)(5).

32. Exemption 5 also incorporates the attorney work product privilege and serves to

protect documents and other memoranda prepared by an attorney in contemplation of litigation. *See NLRB v. Sears, Roebuck & Co. ("Sears")*, 421 U.S. 132, 149 (1975); Hudgins Decl. ¶ 31. The protection extends to communications concerning legal theories and litigation strategies within and among federal law enforcement agencies created in anticipation of a criminal prosecution and for the furthering of a criminal prosecution. *Id*.

33. The deliberative process privilege of exemption 5 is meant to "prevent injury to the quality of agency decisions." *See Sears*, 421 U.S. at 151. The basis of the privilege is to (1) encourage open, frank, discussions on matters of policy between subordinates and superiors; (2) protect against premature disclosure of proposed policies before they are actually adopted; and (3) protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's actions. The deliberative process privilege protects the decision-making processes of agencies.

34. EOUSA applied Exemption 5 to portions of the remand search records. EOUSA withheld internal USAO-MDPA emails that discussed whether or not prosecutors should subpoena records from certain third-party individuals. These emails contained investigation and litigation strategy regarding the prosecution of individuals related to the PSU-Sandusky matter. Hudgins Decl. ¶ 32.

35. EOUSA also withheld certain intra-agency communications between federal prosecutors in USAO-MDPA and the Department of Education, FBI, or the Criminal Division of DOJ. The intra-agency discussions regard the developments of investigators and prosecutors, and discuss the potential investigation strategy options the agencies should take to move the investigation forward. The communications included the agencies' legal impressions as the investigation continued to unfold. Hudgins Decl. ¶ 33.

**EXEMPTION 6 and 7(C)**

36. Exemption (b)(6) of the FOIA permits the withholding of personnel and medical files and similar files, which if disclosed, would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6). This exemption has been interpreted by the United States Supreme Court broadly so as to qualify all information pertaining to a particular individual. Hudgins Decl. ¶ 21.

37. Exemption 7 threshold: before an agency can withhold information pursuant to FOIA Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies must demonstrate that the records at issue are related to the enforcement of federal laws, and that the law enforcement activity is within the duties of the agency. Hudgins Decl. ¶ 18.

38. In order to protect information under Exemption (b)(7), an agency must ensure that the information was compiled for law enforcement purposes. In this instance, the information contained in the inadvertently overlooked records were created and obtained in the course of the investigation for the purpose of handling the potential criminal prosecution of Jerry Sandusky and other Pennsylvania State University officials. Hudgins Decl. ¶ 22.

39. Similarly, exemption (b)(7)(C) protects from disclosure "records or information that was compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information…could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

40. EOUSA determined that, as an initial matter, the threshold for Exemption 6 was satisfied because the information withheld applies to particular people. EOUSA also determined that the threshold for Exemption 7(C) was satisfied because records in question were created for

the purpose of handling the potential criminal prosecution of Jerry Sandusky and other Pennsylvania State University officials. Hudgins Decl. ¶ 24.

41. EOUSA asserted Exemptions (b)(6) and (b)(7)(C) to protect the names and identifying information relating to third parties in both the inadvertently overlooked and remand search records. The disclosure of information contained in the records could subject individuals to an unwarranted invasion of their personal privacy by leading efforts to contact them directly, gain access to their personal information, or subject them to harassment or harm. Hudgins Decl. ¶ 25.

42. For example, EOUSA withheld the names, contact information and personal identifying information of third-party students and faculty. The release of names or identifying information related to third parties not publicly acknowledged by law enforcement could damage the individuals' reputation by virtue of being associated with any law enforcement investigation. Hudgins Decl. ¶ 26.

43. In the remand search records, EOUSA also withheld the identities of third parties providing tips or other information to government prosecutors through the USAO-MDPA public contact email address. These individuals appeared to be third parties without any association with Pennsylvania State University. Hudgins Decl. ¶ 27.

44. This information would provide little or no information regarding the government's performance of its duties. Thus, no public interest would counterbalance the individuals' privacy right in the information withheld under this exemption. Hudgins Decl. ¶ 28.

### EXEMPTION 7(D)

45. Exemption 7(D) provides protection for "records or information compiled for law enforcement purposes… [which] could reasonably be expected to disclose the identity of a

confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D).

46. The inadvertently overlooked records were obtained by federal grand jury subpoena to Pennsylvania State University ("PSU"). These documents were compiled by federal agencies for law enforcement purposes, in this instance, to assist federal investigators in their investigation. Hudgins Decl. ¶ 19.

47. During the course of processing this request, EOUSA learned that PSU provided information pertaining to many individuals and the institution at large to federal investigators solely under the presumed confidentiality of the grand jury investigation. Hudgins Decl. ¶ 19.

48. In the remand records, documents and information were provided by third parties, often through counsel. EOUSA withheld references to confidentially provided records as well as the passwords to encrypted records provided to federal prosecutors. Hudgins Decl. ¶ 20.

49. For example, EOUSA withheld portions of documents reflecting information provided to federal investigators from potential subjects, or their attorneys on a confidential basis. In most instances, EOUSA was able to segregate the document to release in part. Hudgins Decl. ¶ 20.

## REFERRALS

50. In this case, referrals were made from the remand search records. For the Department of Education, EOUSA referred emails and documents created by the Department of Education relating to Pennsylvania State University. Hudgins Decl. ¶ 38.

51.     In the mix of remand search records, there were some records containg Department of Education equities where EOUSA had difficulty determining their responsiveness to Plaintiff's request. Hudgins Decl. ¶ 39.

52.     Out of an abundance of caution, EOUSA referred the records where there was uncertainty regarding their responsiveness to the Department of Education to make the final determination. *Id*.

53.     There were a few documents of primary equity referred to the FBI for final decision. *Id*. ¶ 40.

54.     EOUSA checked on the status of the referrals. As of April 12, 2021, EOUSA was unable to obtain a final response from the Department of Education or the FBI on the status of their referrals. *Id*. ¶ 41.

55.     Given the lack of response from the Department of Education and FBI, EOUSA has made withholding determinations and included them in an April 12, 2021 supplemental response to prevent injury or delay to Plaintiff. *Id*. ¶ 42.

56.     In this supplemental response, EOUSA released 1 page in full, released 9 pages in part, withheld 3 pages in full, and 4 pages were deemed duplicates. The April 12, 2021 response letter was dated October 20, 2020 by administrative error. *Id*.

## SEGREGABILITY

57.     The FOIA requires that "any reasonably segregable portion of a record" must be released "after deletion of the portions which are exempt" under the Act's nine exemptions. 5 U.S.C. § 552(b) (2012 & Supp. V 2017).

58.     If non-exempt information contained in the record is inextricably intertwined with exempt information, then reasonable segregation is not possible. Hudgins Decl. ¶ 43.

59. During the processing of this request, each page was individually examined line-by-line by members of the Staff to identify non-exempt information which could be reasonably segregated and released. Hudgins Decl. ¶ 44.

60. EOUSA has provided Plaintiff with all non-exempt responsive records to his FOIA request. Hudgins Decl. ¶ 45.

* * *

April 12, 2021

Respectfully submitted,

CHANNING D. PHILIPS, D.C. Bar No. 415793
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By: */s/ Brenda González Horowitz*
BRENDA GONZÁLEZ HOROWITZ
D.C. Bar No. 1017243
Assistant United States Attorney
U.S. Attorney's Office, Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2512
Brenda.Gonzalez.Horowitz@usdoj.gov

*Attorneys for the United States of America*