**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

RYAN BAGWELL,

*Plaintiff*,

v.

U.S. DEPARTMENT OF JUSTICE,

*Defendant*.

Civil Action No. 15-0531 (CRC)

**SUPPLEMENTAL DECLARATION OF NATASHA HUDGINS**

I, Natasha Hudgins, declare the following to be a true and correct statement of facts:

1)       I am an Attorney-Advisor with the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice.   I am assigned to EOUSA's FOIA/PA Staff (the "Staff"), which is the component within EOUSA designated to administer both the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *amended by* the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, and the Privacy Act of 1974 ("PA"), 5 U.S.C. § 552a.   In that position, I have several responsibilities including: acting as a liaison with other divisions and offices of the Department of Justice ("DOJ") in responding to access requests as well as FOIA and PA litigation; reviewing FOIA and PA requests for access to records and case files located in this office and 94 United States Attorney's offices ("USAOs") throughout the nation; reviewing correspondence related to FOIA and PA requests; reviewing searches conducted in response to FOIA and PA access requests; identifying the location of records responsive to FOIA and PA requests; and preparing EOUSA's responses to FOIA and PA requests to ensure that

1

determinations to withhold or release responsive records are in accordance both the FOIA and the PA, as well as with DOJ regulations, *see* 28 C.F.R. §§ 16.3 *et seq.* and §§ 16.40 *et seq.*

2)     The Staff processes and reviews both FOIA and PA requests, responds to administrative appeals, and acts as agency counsel in lawsuits challenging its determinations. As an Attorney-Advisor on the Staff, I have access to EOUSA's files, and I have authority to release and/or withhold records requested under the FOIA and PA. I also have authority to explain the rationale for EOUSA's disclosure determinations.

3)     Due to the nature of my official duties, I am familiar with the procedures followed by EOUSA in responding to FOIA requests generally as well as the actions that EOUSA has taken in response to the FOIA request submitted by the plaintiff in this case, Ryan Bagwell (hereafter "Plaintiff"). The statements I make hereinafter are based on my review of the official files and records of EOUSA, my own personal knowledge, and information I acquired through the performance of my official duties.

4)     The purpose of this declaration is to provide the Court with additional information regarding EOUSA's final responses to plaintiff's FOIA request regarding the federal investigation surrounding the Sandusky sexual abuse scandal at Pennsylvania State University. This declaration consists of: (1) supplemental details regarding the contested withholdings in the inadvertently overlooked and remand documents, and (2) and information supporting the withholding of documents responsive to plaintiff's FOIA requests, but withheld from disclosure pursuant to the Freedom of Information Act ('FOIA") 5 U.S.C. §§ 552 exemptions (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(D). in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974).

2

**Exemption (b)(6) and (b)(7)(C):   Privacy**

5)      Exemption (b)(6) of the FOIA permits the withholding of personnel and medical files and similar files, which if disclosed, would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6).   This exemption has been interpreted by the United States Supreme Court broadly so as to qualify all information pertaining to a particular individual.

6)      In order to protect information under Exemption (b)(7), an agency must ensure that the information was compiled for law enforcement purposes. In this instance, the information contained in the inadvertently overlooked records were created and obtained in the course of the investigation for the purpose of handling the potential criminal prosecution of Jerry Sandusky and other Pennsylvania State University officials.

7)      Similarly, exemption (b)(7)(C) protects from disclosure "records or information that was compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information…could reasonably be expected to constitute an unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(7)(C).

8)      EOUSA determined that, as an initial matter, the threshold for Exemption 6 was satisfied because the information withheld applies to particular people. EOUSA also determined that the threshold for Exemption 7(C) was satisfied because records in question were created for the purpose of handling the potential criminal prosecution of Jerry Sandusky and other Pennsylvania State University officials.

9)      EOUSA asserted Exemptions (b)(6) and (b)(7)(C) to protect the names and identifying information relating to third parties in both the inadvertently overlooked and remand search records.   The disclosure of information contained in the records could subject individuals

3

to an unwarranted invasion of their personal privacy by leading efforts to contact them directly, gain access to their personal information, or subject them to harassment or harm.

**Inadvertently Overlooked Records**

10)      Plaintiff narrowed his request to seek emails that contained the following names: "Surma," "Tomalis," "Masser," "Frazier," "Garban," "Peetz," "Freeh," "Paw," "Chertoff," and "Giuliani."

11)      Plaintiff does not have the consent of any of the third party individuals to obtain records concerning them, or records that relate to them personally relating to the Sandusky investigation.

12)      While the public interest overrides the privacy interest to search for records relating to Sandusky, the public interest does not override the privacy interest of all the individuals for whom records are sought.

13)      Further, the emails are strictly between third party individuals.

14)      In this instance, redacting the names and personally identifiable information ("PII") of these third party individuals is necessary to protect their identity. The names of the third-party individuals have not been publicly released in relation to the Penn State scandal and Plaintiff did not provide a third-party privacy waiver form in support of his request.

15)      There is a higher privacy interest to individuals who are investigated or connected to an investigation where the government ultimately decides not to prosecute. The knowledge of law enforcement records pertaining to an individual can harm their livelihood, personal and professional reputation. Allegations of sexual abuse, including knowledge of sexual abuse, also makes persons the target of violence and harassment against them.

4

16)     The EOUSA asserted Exemptions (b)(6) and b(7)(C) to protect such individuals and those privacy interests in documents and are further detailed in the attached Vaughn Index.

**Exemption (b)(3):   Exempted by Statute**

17)     FOIA Exemption 3 exempts from disclosure information which is: Specifically exempted from disclosure by statute… provided such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3).

18)     In this instance, EOUSA withheld records that were protected from disclosure by Federal Rule of Criminal Procedure, Rule 6e.

19)     Rule 6(e) confers broad protections on grand jury information in order to protect their secrecy. That secrecy is essential to the functioning of a grand jury because it encourages witnesses to testify, limits the ability of suspects and defendants to impede the work of the grand jury and the investigators, protects members of the grand jury, and shields individuals who are accused of criminal activities but ultimately exonerated prior to being charged.

20)     Federal Rule of Criminal Procedure 6(e)(2)(B) is a statue that leaves no discretion about the decision to withhold information from the public.   Government attorneys and other individuals specified by statute are prohibited from disclosing information related to matters occurring before the grand jury.   Thus, EOUSA had no discretion in the release of the records relating to the grand jury proceedings.

21)     EOUSA obtained the inadvertently overlooked records via grand jury subpoena. The narrowed scope of emails are between third party individuals. The emails are not between

5

individuals and DOJ, or the federal government.

22)     USAO-MDPA would not have had access to the contents of the emails but for the grand jury subpoena process. PSU is not a part of the federal government or otherwise obligated to share information with the federal government.

23)     Revealing contents of third party emails that contain specific individuals names and within a certain time frame runs the risk of divulging the secrecy of the grand jury process because the records are now a concentrated set.

24)     Knowing the timeframe of emails and materials obtained via grand jury can shed light into the direction of the investigation because it sheds light on the timeline that is of interest to the grand jury in the scope of their investigation.

25)     Release of the emails could also shed light on the individuals who could have been called as witnesses to the grand jury.

26)     The allegations of sexual abuse are serious criminal charges. The release of the emails would cause harm to the government in trying to carry out its mission to investigate and prosecute crime. If individuals or entities know that their information will not be protected, the government will have difficulty obtaining full and proper responses to subpoenas.

27)     Therefore, release of the information could violate the secrecy of the grand jury proceedings, and as a result the information is protected from disclosure by Exemption 3.

**Exemption (b)(7)(D):   Confidential Informants**

28)     Exemption 7 threshold: Before an agency can withhold information pursuant to FOIA Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies must demonstrate that the

records at issue are related to the enforcement of federal laws, and that the law enforcement activity is within the duties of the agency.

29)     Exemption 7(D) provides protection for "records or information compiled for law enforcement purposes [which] could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source."

30)     As mentioned in my latest declaration, the inadvertently overlooked records were obtained by federal grand jury subpoena to Penn State. The Federal Rules of Criminal Procedure prohibits government attorneys and personnel from disclosing matters pertaining to the grand jury. Often during trial, there are some records that become public or otherwise lose grand jury protection.

31)     However, in this instance, the federal government decided not to prosecute.

32)     Sexual assault crimes are serious, and the knowledge of, or connection to sexual abuse can ruin a person or institution's reputation, stature, career, and livelihood.

33)     Sexual assault victims can suffer the traumatic experiences again and face public shame or humiliation from the release of information.

34)     Penn State provided documents to the Department under circumstances from which an assurance of confidentiality could be reasonably inferred.

35)     Penn State provided information to the federal government in response to the

7

subpoena(s) issued to the university.

36)      Given the nature of how the records were obtained by DOJ, and the seriousness of

the crimes at issue, Penn State could reasonably infer a level of confidentiality unless the

government decided to pursue criminal or civil enforcement against individuals or the university.

37)      As mentioned above, the crimes of sexual assault and abuse are serious allegations.

Serious allegations that are life altering should be afforded an inference of confidentiality when

there was ultimately a decision not to prosecute.

38)      Penn State was at the center of the Sandusky criminal investigation. Their

relationship to the investigation lends itself to an inference of confidentiality.

**Exemption 5:**           **Deliberative Process Privilege & Attorney Work Product**

39)      The attorney-work product privilege of exemption 5 protects "inter-agency or intra

agency memorandum or letters which would not be available by law to a party other than an

agency in litigation with the agency." 5 U.S.C. § 552(b)(5).   The attorney work product privilege

is incorporated into exemption 5 and serves to protect documents and other memoranda prepared

by an attorney in contemplation of litigation. The protection extends to communications

concerning legal theories and litigation strategies within and among federal law enforcement

agencies created in anticipation of a criminal prosecution and for the furthering of a criminal

prosecution.

40)      The deliberative process privilege of exemption 5 is meant to "prevent injury to the

quality of agency decisions." *See NLRD v. Sears Roebuck & Co.*, 421 U.S. 132, 151 (1975).   The

basis of the privilege is to (1) encourage open, frank, discussions on matters of policy between

subordinates and superiors; (2) protect against premature disclosure of proposed policies before

they are actually adopted; and (3) protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's actions. The deliberative process privilege protects the decision making processes of agencies.

41)     In this case, exemption (b)(5) were applied to portions of the remand search records.   EOUSA withheld internal USAO-MDPA emails that discussed whether or not prosecutors should subpoena records from certain third party individuals. These emails contained investigation and litigation strategy regarding the prosecution of individuals related to the PSU-Sandusky matter.

42)     As mentioned in my prior declaration, EOUSA also withheld certain intra-agency communications between federal prosecutors in USAO-MDPA and the Department of Education, FBI, the US Postal Inspection Service, or the Criminal Division of DOJ.   The intra-agency discussions regard the developments of investigators and prosecutors, and discuss the potential investigation strategy options the agencies should take to move the investigation forward. The communications included the agencies' legal impressions as the investigation continued to unfold.

43)     As outlined in the Vaugh index, EOUSA further withheld inter and intra agency discussions surrounding witness interviews, discussions surrounding potential grand jury witnesses, discussions surrounding victim interviews and their impact on the unfolding investigation.

44)     There is significant harm in the release of these deliberative and attorney work product discussions. The release of the information would impede on DOJ's ability to carry out it's mission. It would also impede on the other federal agencies involved ability to dutifully carry out the missions of their respective agencies. It would hinder the ability of prosecutors and federal

employees to honestly provide their mental impressions and legal analysis on issues or developments during an investigation.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed this 2nd day of August, 2021.

Natasha Hudgins
Attorney-Advisor,
Freedom of Information/Privacy Act Staff
Executive Office for United States Attorneys

10